Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:    (212) 292-5390
Facsimile:    (212) 292-5391
*Attorneys for Plaintiff*
*Smart Study Co., Ltd.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SMART STUDY CO., LTD., | CIVIL ACTION No. ___ |
| *Plaintiff* | |
| v. | **COMPLAINT** |
| ACUTEYE-US, APZNOE-US, BEIJINGKANGXINTANGSHANGMAOYOUXI ANGONGSI, BLUE VIVI, BONUSWEN, CHANGGESHANGMAOYOUXIANGONGSI, CITIHOMY, CKYPEE, DAFA INTERNATIONAL, DAZZPARTY, FAMING, GAIFEI TRADE CO LTD, GEGEONLY, HAITING$, HAOCHENG-TRADE, HAPPY PARTY-001, HEARTLAND GO, HUIBI-US, JOYSAIL, JYOKER-US1, KANGXINSHENG1, LADYBEETLE, LICHE CUPCAKE STAND, LVYUN, MARY GOOD SHOP, NA-AMZ001, NAGIWART, NUOTING, QINGSHU, QT-US, SALIMHIB-US, SAM CLAYTONDDG, SENSIAMZ BACKDROP, SHENZHENSHIXINDAJIXIEYOUXIANGONGS I, SMASSY US, SMSCHHX, SUJIUMAISUSU, SUNNYLIFYAU, TELIKE, THEGUARD, TONGMUMY, TOPIVOT, TUOYI TOYS, UNE PETITE MOUETTE, WCH- US, WEN MIKE, WONDERFUL MEMORIES, WOW GIFT, XUANNINGSHANGWU, XUEHUA INC, XUIYUI7I, YAMMO202, YICHENY US, | **Jury Trial Requested**  **FILED UNDER SEAL** |

YLILILY,
YONGCHUNCHENGQINGMAOYIYOUXIANG
ONGSI, YOOFLY, ZINGON US and 老兵俱乐部,

*Defendants*

**GLOSSARY**

| Term | Definition |
|---|---|
| **Plaintiff or Smart** | Smart Study Co., Ltd. |
| **Defendants** | Acuteye-US, APZNOE-US, beijingkangxintangshangmaoyouxiangongsi, blue vivi, Bonuswen, changgeshangmaoyouxiangongsi, Citihomy, Ckypee, DAFA International, Dazzparty, FAming, GaiFei Trade Co Ltd, GeGeonly, HAITing$, Haocheng-Trade, HAPPY PARTY-001, Heartland GO, Huibi-US, Joysail, Jyoker-US1, Kangxinsheng1, LADYBEETLE, LICHE Cupcake stand, lvyun, Mary good shop, NA-AMZ001, Nagiwart, nuoting, Qingshu, QT-US, SALIMHIB-US, SAM CLAYTONddg, Sensiamz Backdrop, shenzhenshixindajixieyouxiangongsi, SMASSY US, SMSCHHX, sujiumaisusu, sunnylifyau, telike, Theguard, tongmumy, Topivot, Tuoyi Toys, Une petite mouette, wch- us, WEN MIKE, WONDERFUL MEMORIES, WOW GIFT, xuanningshangwu, XueHua INC, Xuiyui7i, YAMMO202, Yicheny US, YLILILY, yongchunchengqingmaoyiyouxiangongsi, YooFly, Zingon US and 老兵俱乐部 |
| **Amazon** | Amazon.com, a Seattle, Washington-based, online marketplace and e-commerce platform owned by Amazon.com, Inc., a Delaware corporation, that allows manufacturers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their retail products, which, upon information and belief, primarily originate from China, directly to consumers worldwide and specifically to consumers residing in the U.S., including New York |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Address** | 244 Madison Ave, Suite 411, New York, New York 10016 |
| **Complaint** | Plaintiff's Complaint |
| **Application** | Plaintiff's *Ex Parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery |
| **Yang Dec.** | Declaration of Su Jeong Yang in Support of Plaintiff's Application |

| Futterman Dec. | Declaration of Danielle S. Futterman in Support of Plaintiff's Application |
|---|---|
| **Baby Shark Content** | One of Smart's most successful creations, which is the Pinkfong "Baby Shark" song and viral music video with characters |
| **Baby Shark Applications** | U.S. Trademark Serial Application Nos.: 79/253,035 for registration of "BABY SHARK" for a variety of goods in Classes 41, 25, 16 and 9; 88/396,786 for registration of "PINKFONG BABY SHARK" for a variety of goods in Class 25; 88/529,984 for registration of "PINKFONG" for a variety of goods in Class 2, 3, 9, 14, 16, 18, 20, 21, 24, 25, 26, 27, 28, 29, 30, 32, 41; 88/530,086 for registration of "BABY SHARK" for a variety of goods in Class 2, 3, 9, 14, 16, 18, 20, 21, 24, 25, 26, 27, 28, 29, 30, 32, 41; 88/594,141 for "PINKFONG" for a variety of goods in Class 5; and 88/594,122 for "BABY SHARK" for a variety of goods in Class 5 |
| **Baby Shark Registrations** | U.S. Trademark Registration Nos.: 5,803,108 for "BABY SHARK" for a variety of goods in Class 28; 5,483,744 for "PINKFONG" for a variety of goods in Classes 3 and 21; 5,327,527 for "PINKFONG" for a variety of goods in Classes 9, 16 and 28; 4,993,122 for "PINKFONG" a variety of goods in Classes 9 and 25; 6,138,374 for **pinkfong** for a variety of goods in Class 41; 6,337,210 for "PINKFONG BABY SHARK" for a variety of goods in Class 21 and 6,021,523 for **pinkfong Baby Shark** for a variety of goods in Class 28 |
| **Baby Shark Marks** | The marks covered by the Baby Shark Registrations and Baby Shark Applications |
| **Baby Shark Works** | U.S. Copyright Registration Nos.: VA 2-130-856, covering Baby Shark; VA 2-130-847, covering Daddy Shark; VA 2-130-854, covering Mommy Shark; VA 2-131-983, covering Pink Fong Mascot; SR 823-609, covering Baby Shark (Sound Recording and Music); and PA 2-142-905, covering Baby Shark (Motion Picture) |
| **Baby Shark Products** | An extensive worldwide licensing program for a wide variety of consumer products such as toys, sound books, t-shirts, associated with and/or related to the Baby Shark Content |
| **Counterfeit Products** | Products bearing or used in connection with the Baby Shark Marks and/or Baby Shark Works, and/or products in packaging and/or containing labels and/or |

| | |
|---|---|
| | hang tags bearing the Baby Shark Marks and/or Baby Shark Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the Baby Shark Marks and/or Baby Shark Works and/or products that are identical or confusingly or substantially similar to the Baby Shark Products |
| **Infringing Listings** | Defendants' listings for Counterfeit Products |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as Amazon, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) |
| **Financial Institutions** | Any banks, financial institutions, credit card companies and payment processing agencies, such as Amazon.com, Inc., Amazon Payments, Inc. ("Amazon Pay"), PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), PingPong Global Solutions, Inc. ("PingPong") and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of Defendants |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, those owned and operated, directly or indirectly, by Amazon, such as Amazon.com, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants |

|  | and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |
|--|--|

Plaintiff, by and through its undersigned counsel, alleges as follows:[1]

## NATURE OF THE ACTION

1.      This action involves claims for trademark infringement of Plaintiff's federally registered trademarks in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 *et seq*.; counterfeiting of Plaintiff's federally registered trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c); trademark infringement of Plaintiff's unregistered trademarks in violation of 15 U.S.C. § 1125; false designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); copyright infringement of Plaintiff's federally registered copyrights in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* and related state and common law claims, arising from the infringement of the Baby Shark Marks and Baby Shark Works, including, without limitation, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling unlicensed, counterfeit and infringing versions of Plaintiff's Baby Shark Products by Defendants.

## JURISDICTION AND VENUE

2.      This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq*.; pursuant to 28 U.S.C. §1338(b) as an action arising out of claims for false designation of origin and unfair competition and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars.  This Court has

---

[1] Where a defined term is referenced herein but not defined, it should be understood as it is defined in the Glossary.

supplemental jurisdiction pursuant to 28 U.S.C. §§1367(a), as the claims asserted thereunder are so closely related to the federal claims brought in this Action as to form part of the same case or controversy.

3.      Personal jurisdiction exists over Defendants in New York pursuant to N.Y.C.P.L.R. § 302(a)(1) and N.Y.C.P.L.R. § 302(a)(3), or in the alternative, Federal Rule of Civil Procedure 4(k), because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York, and/or derive substantial revenue from their business transactions in New York and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in New York such that Defendants should reasonably expect such actions to have consequences in New York, for example:

a.      Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including New York, through accounts with online marketplace platforms such as Amazon, as well as any and all as yet undiscovered User Accounts, through which consumers in the U.S., including New York, can view one or more of Defendants' Merchant Storefronts that each Defendant operates, uses to communicate with Defendants regarding their listings for Counterfeit Products and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including New York, as a means for establishing regular business with the U.S., including New York.

b.      Upon information and belief, Defendants are sophisticated sellers, each operating one or more commercial businesses through their respective User Accounts, using

their Merchant Storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Counterfeit Products at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically New York.

c.    Upon information and belief, all Defendants accept payment in U.S. Dollars and offer shipping to the U.S., including to New York and specifically to the New York Address.

d.    Upon information and belief, Defendants have transacted business with consumers located in the U.S., including New York, for the sale and shipment of Counterfeit Products.

e.    Upon information and belief, Defendants are aware of Plaintiff, its Baby Shark Products, the Baby Shark Content, Baby Shark Works and Baby Shark Marks and are aware that their illegal counterfeiting and infringing actions alleged herein are likely to cause injury to Plaintiff in the U.S. and specifically, in New York.

4.    Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants conduct, transact and/or solicit business in New York.

## THE PARTIES

5.    Plaintiff is a Republic of Korean limited company with a principal place of business at 94, Myeongdal-ro, Seocho-gu, Seoul, Republic of Korea, South, 06668.

6.    Upon information and belief, Defendants are merchants on the Amazon.com online marketplace platform, which, upon information and belief, is owned by Amazon.com, Inc., a Delaware corporation with a principal place of business at 410 Terry Avenue North, Seattle, WA 98109, through which Defendants offer for sale and/or sell Counterfeit Products.

## GENERAL ALLEGATIONS

### Plaintiff and Its Well-Known Baby Shark Content and Baby Shark Products

7.     Smart is a global entertainment company specializing in developing animated and gaming content to deliver high-quality entertainment. Headquartered in Seoul, South Korea, Smart currently has 200+ employees and offices in Los Angeles, Shanghai and Hong Kong. Smart has developed award-winning brands including "Pinkfong", "Monster Super League", "JellyKing" and "Tamago Monsters".

8.     Through Smart's preschool brand, Pinkfong, the company produces modern-day songs and stories to provide stimulating and fun learning experiences to children.

9.     One of Smart's most successful creations is the Pinkfong "Baby Shark" song and viral music video with characters, which to date has amassed nearly 8.8 billion views on YouTube[2] and debuted at No. 32 on the Billboard Hot 100 Chart.[3]

10.     Smart has developed and initiated an extensive worldwide licensing program for a wide variety of consumer products such as toys, sound books and t-shirts associated with and/or related to the BABY SHARK and PINKFONG trademarks and the Baby Shark Content.  Examples of the Baby Shark Products are attached hereto as **Exhibit A** and incorporated herein by reference.

11.     Smart sells its Baby Shark Products through its online shops accessible through the PINKFONG website at https://www.pinkfong.com/en/, to a number of countries, including but not limited to, United States, Greece, Malaysia, Singapore, Portugal, etc. In the United States, Smart sells its Baby Shark Products throughout major retailers and online marketplaces, including, but not

---

[2] *See* Pinkfong! Kids' Songs & Stories, *Baby Shark Dance | Sing and Dance! | Animal Songs | PINKFONG Songs for Children*, YouTube (June 17, 2016), https://www.youtube.com/watch?v=XqZsoesa55w.
[3] *See* Kevin Rutherford, *The viral children's song, which spawned a dance challenge following the release of Pinkfong's 2016 version, bows at No. 32.*, BILLBOARD (Jan. 8, 2019), https://www.billboard.com/articles/columns/chart-beat/8492743/baby-shark-billboard-hot-100-top-40-pinkfong.

limited to Walmart, Target and Amazon.

12.     The Baby Shark Products retail from $16.99 (t-shirts) to $49.99 (sound toys).

13.     The Baby Shark Content and Baby Shark Products have received worldwide attention for their success and popularity and are featured in major news outlets.[4]  During the holidays, the Baby Shark Products were sold out and became difficult to find due to their popularity.[5]

14.     While Smart has gained significant common law trademark and other rights in its BABY SHARK and PINKFONG trademarks through its extensive use, advertising and promotion, Smart has also protected its valuable rights by filing for and obtaining federal trademark registrations.

15.     For example, Smart is the owner of the following U.S. Trademark Registrations Nos.:5,803,108 for "BABY SHARK" for a variety of goods in Class 28; 5,483,744 for "PINKFONG" for a variety of goods in Classes 3 and 21; 5,327,527 for "PINKFONG" for a variety of goods in Classes 9, 16 and 28; 4,993,122 for "PINKFONG" a variety of goods in Classes 9 and 25; 6,138,374 for **pinkfong** for a variety of goods in Class 41; 6,337,210 for "PINKFONG BABY SHARK" for a variety of goods in Class 21 and 6,021,523 for **pinkfong Baby Shark** for a variety of goods in Class 28.  Additionally, Smart also owns U.S. Trademark Serial Application Nos.: 79/253,035 for registration of "BABY SHARK" for a variety of goods in Classes 41, 25, 16 and 9; 88/396,786 for registration of "PINKFONG BABY SHARK" for a variety of goods in Class 25; 88/529,984 for registration of "PINKFONG" for a variety of goods in Class 2, 3, 9, 14, 16, 18, 20, 21, 24, 25, 26, 27, 28, 29, 30, 32, 41; 88/530,086 for registration of "BABY SHARK" for a

---

[4] Aja Romano, *Baby Shark (doo doo do doo do doo), explained* (March 21, 2019), VOX, https://www.vox.com/culture/2019/1/11/18177097/what-is-baby-shark-dance-challenge-explained; AJ Willingham, *Baby Shark has taken over the world. Here's who's responsible.* (January 20, 2019), CNN, https://www.cnn.com/2019/01/15/entertainment/baby-shark-pinkfong-song-trnd/index.html.
[5] Jen Nuneau, *Baby Shark Takes a Bite Out of Holiday Gifting as Toys Sell Out on Amazon* (December 17, 2018), PEOPLE, https://people.com/parents/baby-shark-toys-sell-out-amazon-holidays/.

variety of goods in Class 2, 3, 9, 14, 16, 18, 20, 21, 24, 25, 26, 27, 28, 29, 30, 32, 41; 88/594,141 for

"PINKFONG" for a variety of goods in Class 5; and 88/594,122 for "BABY SHARK" for a variety

of goods in Class 5. True and correct copies of the registration certificates and applications for the

Baby Shark Marks are attached hereto as **Exhibit B** and incorporated herein by reference.

16.    The Baby Shark Marks are currently in use in commerce in connection with the Baby

Shark Products.  The Baby Shark Marks were first used in commerce on or before the date of first

use as reflected in the registrations and applications attached hereto as Exhibit B.

17.    In addition, Plaintiff also owns both registered and unregistered copyrights related to

the Baby Shark Content and Baby Shark Products.

18.    Smart is the owner of the following U.S. Copyright Registration Nos.: VA 2-130-856,

covering Baby Shark; VA 2-130-847, covering Daddy Shark; VA 2-130-854, covering Mommy

Shark; VA 2-131-983, covering Pink Fong Mascot; SR 823-609, covering Baby Shark (Sound

Recording and Music); PA 2-142-905, covering Baby Shark (Motion Picture), as well as numerous

common law copyrights. True and correct copies of the registration certificates for the Baby Shark

Works are attached hereto as **Exhibit C** and incorporated herein by reference.

19.    The success of the Baby Shark Products is due in large part to Smart's marketing,

promotion and distribution efforts. These efforts include, but are not limited to, the advertising and

promotion of the Baby Shark Products through the product catalogue on Smart's Website, print and

internet-based advertising and publicity for the Baby Shark Products, and placement of the Baby

Shark Products at dozens of authorized major retail outlets.

20.    Smart's success is also due to its use of high-quality materials and processes in making

the Baby Shark Products.

21.    Additionally, Smart owes a substantial amount of the success of the Baby Shark Products

to its consumers and word-of-mouth buzz that its consumers have generated.

22.    Smart's efforts, the quality of its Baby Shark Products, its marketing, promotion and distribution efforts, as well as the word-of-mouth buzz generated by its consumers have made the Baby Shark Products, Baby Shark Marks and Baby Shark Works prominently placed in the minds of the public.  Retailers, retail buyers, consumers and members of the public have become familiar with the Baby Shark Products and associate them exclusively with Smart.

23.    As a result of such associations, Smart, its Baby Shark Products, Baby Shark Marks and Baby Shark Works have acquired a valuable reputation and goodwill among the public.

24.    Smart has gone to great lengths to protect its interests in and to the Baby Shark Products, Baby Shark Marks and Baby Shark Works.  No one other than Smart is authorized to manufacture, import, export, advertise, offer for sale or sell any goods utilizing the Baby Shark Marks and/or Baby Shark Works without the express written permission of Smart.

## Amazon and Defendants' User Accounts

25.    Amazon is an online marketplace and e-commerce platform that allows manufacturers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their retail products originating primarily from China, [6] among other locations, directly to consumers worldwide and specifically to consumers residing in the U.S., including New York.

26.    Amazon is recognized as one of the leaders of the worldwide e-commerce and digital retail market and was projected to generate approximately $258.22 billion in U.S. retail e-commerce sales in 2018, nearly half the U.S. e-commerce market.[7]  Sales to the U.S. make up a significant

---

[6] *See* Juozas Kaziukenas, *Chinese Sellers Are Building Brands on Amazon,* MARKETPLACE PULSE (Dec. 6, 2018), https://www.marketplacepulse.com/articles/chinese-sellers-are-building-brands-on-amazon.
[7] *See* eMarketer Editors, *Amazon Now Has Nearly 50% Of Us Ecommerce Market*, EMARKETER.COM (Jul. 16, 2018), https://www.emarketer.com/content/amazon-now-has-nearly-50-of-us-ecommerce-market.

percentage of the business done on Amazon.[8]  Currently, Amazon is valued at over $797 billion, which is the largest market value of a public company in the U.S.[9]

27.     Many of the third-party merchants that have User Accounts with and operate Merchant Storefronts on Amazon, like Defendants, are located in China.[10]  As of 2018, third-party merchants have sold over $160 billion in merchandise through User Accounts on Amazon.[11]  Third-party merchant sales account for half of the volume of all products sold on Amazon.[12]

28.     Amazon aggressively uses the Internet and television, to market itself and the products offered for sale and/or sold by its third-party merchant users to potential consumers, particularly in the U.S.  In 2018 alone, Amazon spent approximately $3.4 billion on marketing.[13]

29.     As recently addressed in news reports,[14] and as reflected in the federal lawsuits filed against third-party merchants offering for sale and selling infringing and/or counterfeit products on Amazon,[15] an astronomical number of counterfeit and infringing products are offered for sale and sold on Amazon at a rampant rate.[16]

30.     Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their User

[8] *See* Amazon.com, Inc., Annual Report (Form 10-K) (Jan. 31, 2018).

[9] *See* Lauren Feiner, *Amazon is the most valuable public company in the world*, CNBC, https://www.cnbc.com/2019/01/07/amazon-passes-microsoft-market-value-becomes-largest.html/.

[10] *See id.*

[11] *See* Juozas Kaziukenas, *Amazon Gross Merchandise Volume $277 Billion in 2018,* Marketplace Pulse (April 12, 2019), https://www.marketplacepulse.com/articles/amazon-gross-merchandise-volume-277-billion-in-2018.

[12] *See* Parmy Olson, *Meet The Billionaire Who Defied Amazon And Built Wish, The World's Most-Downloaded E-Commerce App*, Forbes (March 13, 2019), https://www.forbes.com/sites/parmyolson/2019/03/13/meet-the-billionaire-who-defied-amazon-and-built-wish-the-worlds-most-downloaded-e-commerce-app/#da45b4d70f52.

[13] *See Amazon: Ad Spend in the U.S. 2017*, Statistic, https://www.statista.com/statistics/192254/us-ad-spending-of-amazon/ (last visited Apr. 17, 2019).

[14] *See* Louise Matsakis, *Amazon Wants Brands to Fight Fake Products Themselves,* Wired (Mar. 1, 2019), https://www.wired.com/story/amazon-fake-products-project-zero/.

[15] *See, e.g., Apple Inc. v. Mobile Star LLC,* No. C17-1120 RAJ (W.D. Cal. Aug. 4, 2017) and *Diamler AG v. Amazon.com, Inc.*, 16-cv-00518-RSM (W.D. Wash. Mar. 11, 2019).

[16] *See* Steve Brachmann, *Amazon's Counterfeit Problem is a Big One-for Shareholders, Brand Owners and Consumers Alike,* IP Watchdog (Feb. 27, 2019), http://www.ipwatchdog.com/2019/02/27/amazons-counterfeit-problem-big-one-for-everyone/id=106710/.

Accounts and on their Merchant Storefronts on Amazon as well as potentially yet undiscovered additional online marketplace platforms.

31.    Through their Merchant Storefronts, Defendants offer for sale and/or sell consumer products, including Counterfeit Products, and target and ship such products to customers located in the U.S., including New York, and throughout the world.

32.    Defendants' Merchant Storefronts share unique identifiers, such as design elements along with similarities in price, description of the goods offered and of the Counterfeit Products themselves offered for sale.

33.    Defendants are in constant communication with each other and regularly participate in online chatroom discussions involving illegal counterfeiting activities, pending litigation and potential new lawsuits.

**Defendants' Wrongful and Infringing Conduct**

34.    Particularly in light of Plaintiff's success with its Baby Shark Content and Baby Shark Products, as well as the reputation they have gained, Plaintiff and its Baby Shark Content and Baby Shark Products have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill, reputation and fame that Plaintiff has amassed in its Baby Shark Content, Baby Shark Products, Baby Shark Works and Baby Shark Marks and Plaintiff investigates and enforces against such activities.

35.    Through Epstein Drangel's investigative and enforcement efforts, Plaintiff learned of Defendants' actions which vary and include, but are not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products to U.S. consumers, including those located in the state of New York, through Defendants' User Accounts and Merchant Storefronts.  Printouts of Infringing Listings

from Defendants' User Accounts and Merchant Storefronts are included in **Exhibit D** attached hereto and incorporated herein by reference.

36.      Defendants are not, and have never been, authorized by Plaintiff or any of its authorized agents, authorized licensees or authorized distributors to copy, manufacture, import, export, advertise, distribute, offer for sale or sell the Baby Shark Products or to use the Baby Shark Marks/and or Baby Shark Works, or any marks or artwork that are confusingly or substantially similar to the Baby Shark Marks and Baby Shark Works.

37.      Defendants' Counterfeit Products are nearly indistinguishable from Plaintiff's Baby Shark Products, only with minor variations that no ordinary consumer would recognize.

38.      During its investigation, Epstein Drangel identified Defendants as offering for sale and/or selling Counterfeit Products and specified a shipping address located at the New York Address and verified that each Defendant provides shipping to the New York Address. Printouts of the checkout pages for the Counterfeit Products and pages from Defendants' Merchant Storefronts reflecting that the Defendants ship the Counterfeit Products to the New York Address are included in **Exhibit D**.

39.      Epstein Drangel confirmed that each Defendant is still currently offering for sale and/or selling Counterfeit Products through their respective User Accounts and/or Merchant Storefronts, accepting payment for such Counterfeit Products in U.S. Dollars and that each Defendant provides shipping and/or has actually shipped Counterfeit Products to the U.S., including to customers located in New York.  Plaintiff's findings are supported by Defendants' Infringing Listings and/or the checkout pages for Counterfeit Products, which are included in **Exhibit D**.

40.      For example, below on the left is an image of one of Plaintiff's Baby Shark Products. Depicted further below is a listing for Defendant beijingkangxintangshangmaoyouxiangongsi's

Counterfeit Product ("beijingkangxintangshangmaoyouxiangongsi Infringing Listing" and "beijingkangxintangshangmaoyouxiangongsi Counterfeit Product," respectively). The beijingkangxintangshangmaoyouxiangongsi Infringing Listing appears on Defendant beijingkangxintangshangmaoyouxiangongsi's Merchant Storefront, https://www.amazon.com/s?me=A2ZCIAMN3SSPMP, and offers the beijingkangxintangshangmaoyouxiangongsi Counterfeit Product for $17.99 per item, using, featuring and/or incorporating the Baby Shark Marks and/or Baby Shark Works and/or confusingly or substantially similar marks and/or artwork in the descriptions and/or product images in the body of the listing. Further, the beijingkangxintangshangmaoyouxiangongsi Counterfeit Product is virtually identical to one of Plaintiff's Baby Shark Products and features and/or incorporates the Baby Shark Marks and/or Baby Shark Works. There is no question that the beijingkangxintangshangmaoyouxiangongsi Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Baby Shark Products or that the beijingkangxintangshangmaoyouxiangongsi Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the Baby Shark Marks and/or Baby Shark Works:

| **Baby Shark Product** | **Defendant's Counterfeit Product** |
|---|---|
|  |  |

41.     By way of another example, below on the left is an image of one of Plaintiff's Baby

Shark Products.  Depicted further below is a listing for Defendant lvyun's Counterfeit Product

("lvyun Infringing Listing" and "lvyun Counterfeit Product," respectively).  The lvyun Infringing

Listing    appears    on    Defendant    lvyun's    Merchant    Storefront,

https://www.amazon.com/s?me=A2XHY5NL0W2K86, and offers the lvyun Counterfeit Product

for $14.99 per item, using, featuring and/or incorporating the Baby Shark Marks and/or Baby Shark

Works and/or confusingly or substantially similar marks and/or artwork in the descriptions and/or

product images in the body of the listing.   Further, the lvyun Counterfeit Product is virtually

identical to one of Plaintiff's Baby Shark Products and features and/or incorporates the Baby Shark

Mark and/or Baby Shark Works.  There is no question that the lvyun Counterfeit Product is designed

to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Baby

Shark Products or that the lvyun Counterfeit Product is otherwise approved by or sourced from

Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the

unauthorized use of the Baby Shark Marks and/or Baby Shark Works:

| **Baby Shark Product** | **Defendant's Counterfeit Product** |
| :---: | :---: |

 

42.     As another example, below on the left is an image of one of Plaintiff's Baby Shark

Products.  Depicted further below is a listing for Defendant WEN MIKE's Counterfeit Product ("WEN MIKE Infringing Listing" and "WEN MIKE Counterfeit Product," respectively).  The WEN MIKE Infringing Listing appears on Defendant WEN MIKE's Merchant Storefront, https://www.amazon.com/s?me=A3N0SMFOLVH2W7, and offers the WEN MIKE Counterfeit Product for $7.99 per item, using, featuring and/or incorporating the Baby Shark Marks and/or Baby Shark Works and/or confusingly or substantially similar marks and/or artwork in the descriptions and/or product images in the body of the listing.  Further, the WEN MIKE Counterfeit Product is virtually identical to one of Plaintiff's Baby Shark Products and features and/or incorporates the Baby Shark Marks and/or Baby Shark Works.  There is no question that the WEN MIKE Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Baby Shark Products or that the WEN MIKE Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the Baby Shark Mark and/or Baby Shark Works:

| **Baby Shark Product** | **Defendant's Counterfeit Product** |
| :---: | :---: |
|  |  |

43.    By these dealings in Counterfeit Products (including, without limitation, copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products), Defendants violated Plaintiff's exclusive

rights in the Baby Shark Marks and/or Baby Shark Works, and have used marks and/or artwork that are confusingly or substantially similar to, identical to and/or constitute counterfeiting and/or infringement of the Baby Shark Marks and/or Baby Shark Works in order to confuse consumers into believing that such Counterfeit Products are the Baby Shark  Products and aid in the promotion and sales of their Counterfeit Products.  Defendants' conduct began long after Plaintiff's adoption and use of the Baby Shark Marks and Baby Shark Works, after Plaintiff obtained federal registrations in the Baby Shark Marks and Baby Shark Works, as alleged above, and after Plaintiff's Baby Shark Products and Baby Shark Marks and Baby Shark Works became well-known to the purchasing public.

44.     Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiff's ownership of the Baby Shark Marks and Baby Shark Works, of the fame and incalculable goodwill associated therewith and of the popularity and success of the Baby Shark Content and Baby Shark Products, and in bad faith adopted the Baby Shark Marks and/or Baby Shark Works.

45.     Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff, the Baby Shark Content, Baby Shark Marks, Baby Shark Works and Baby Shark Products.

46.     Defendants' dealings in Counterfeit Products, as alleged herein, has caused, and will continue to cause confusion, mistake, economic loss, and has, and will continue to deceive consumers, the public and the trade with respect to the source or origin of Defendants' Counterfeit Products, thereby causing consumers to erroneously believe that such Counterfeit Products are licensed by or otherwise associated with Plaintiff, thereby damaging Plaintiff.

47.     By engaging in these actions, Defendants have, jointly and severally, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to Plaintiff: infringed and counterfeited the Baby Shark Marks and/or Baby Shark Works, committed unfair competition and unfairly and unjustly profited from such activities at Plaintiff's expense.

48.     Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

## CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**(Trademark Counterfeiting)**
**[15 U.S.C. § 1114(1)(b)/Lanham Act § 32; 15 U.S.C. § 1116(d)/Lanham Act § 34; 15 U.S.C. § 1117(b)-(c)/Lanham Act § 35]**

49.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

50.     Plaintiff is the exclusive owner of all right and title to the Baby Shark Marks.

51.     Plaintiff has continuously used the Baby Shark Marks in interstate commerce since on or before the date of first use as reflected in the registration certificates attached hereto as **Exhibit B**.

52.     Without Plaintiff's authorization or consent, with knowledge of Plaintiff's well-known and prior rights in its Baby Shark Marks and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied and/or colorably imitated the Baby Shark Marks and/or used spurious designations that are identical with, or indistinguishable from, the Baby Shark Marks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

53.     Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold their Counterfeit Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the Baby Shark Marks through their participation in such activities.

54.     Defendants have applied their reproductions, counterfeits, copies and colorable imitations of the Baby Shark Marks to packaging, point-of-purchase materials, promotions and/or advertisements intended to be used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with or are otherwise authorized by Plaintiff, thereby making substantial profits and gains to which they are not entitled in law or equity.

55.     Defendants' unauthorized use of the Baby Shark Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff or its authorized agents and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the Baby Shark Marks.

56.     Defendants' actions constitute willful counterfeiting of the Baby Shark Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

57.     As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss and irreparable injury and damage to Plaintiff, its business, its reputation and its valuable rights in and to the Baby Shark Marks and the goodwill

associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiff

has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause

such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Baby Shark

Marks.

58.    Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive

relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of

Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages

obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages and/or

statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale

or distributed and reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**(Infringement of Registered Trademarks)**
**[115 U.S.C. § 1114/Lanham Act § 32(a)]**

59.    Plaintiff repleads and incorporates by reference each and every allegation set forth

in the preceding paragraphs as if fully set forth herein.

60.    Plaintiff has continuously used the Baby Shark Marks in interstate commerce since

on or before the date of first use as reflected in the registration certificates attached hereto as **Exhibit**

**B**.

61.    Plaintiff, as owner of all right, title and interest in and to the Baby Shark Marks, has

standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

62.    Defendants were, at the time they engaged in their actions as alleged herein, actually

aware that Plaintiff is the owner of the federal trademark registrations for the Baby Shark Marks.

63.    Defendants did not seek and thus inherently failed to obtain consent or authorization

from Plaintiff, as the registered trademark owner of the Baby Shark Marks, to deal in and

commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell the Baby Shark Products and/or related products bearing the Baby Shark Marks into the stream of commerce.

64.     Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of the Baby Shark Marks and/or which are identical or confusingly similar to the Baby Shark Marks.

65.     Defendants knowingly and intentionally reproduced, copied and colorably imitated the Baby Shark Marks and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Defendants' Counterfeit Products.

66.     Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that Plaintiff is the owner of all rights in and to the Baby Shark Marks.

67.     Defendants' egregious and intentional use of the Baby Shark Marks in commerce on or in connection with Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Defendants' Counterfeit Products are Plaintiff's Baby Shark Products or are otherwise associated with, or authorized by, Plaintiff.

68.     Defendants' actions have been deliberate and committed with knowledge of Plaintiff's rights and goodwill in the Baby Shark Marks, as well as with bad faith and the intent to

cause confusion, mistake and deception.

69.      Defendants' continued, knowing, and intentional use of the Baby Shark Marks without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered Baby Shark Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

70.      As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the Baby Shark Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and the valuable Baby Shark Marks.

71.      Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION
**(False Designation of Origin, Passing Off & Unfair Competition)**
**[15 U.S.C. § 1125(a)/Lanham Act § 43(a)]**

72.      Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

73.      Plaintiff, as the owner of all right, title and interest in and to the Baby Shark Marks has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

74.     The Baby Shark Marks are inherently distinctive and/or have acquired distinctiveness.

75.     Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly similar to, and constitute reproductions of the Baby Shark Marks and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Counterfeit Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' substandard Counterfeit Products are Baby Shark Products or related products, and/or that Defendants' Counterfeit Products are authorized, sponsored, approved, endorsed or licensed by Plaintiff and/or that Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of such Counterfeit Products, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, the Baby Shark Marks, to Defendants' substantial profit in blatant disregard of Plaintiff's rights.

76.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products that are identical to, confusingly similar to or which constitute colorable imitations of Plaintiff's Baby Shark Products using marks that are identical and/or confusingly similar to, or which constitute colorable imitations of the Baby Shark Marks, Defendants have traded off the extensive goodwill of Plaintiff and its Baby Shark Products and did in fact induce, and intend to, and will continue to induce customers to purchase Defendants' Counterfeit Products, thereby directly and unfairly competing with Plaintiff. Such conduct has permitted and will continue to

permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff and its Baby Shark Marks, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

77. Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks that are identical or confusingly similar to and constitute reproductions of the Baby Shark Marks would cause confusion, mistake or deception among purchasers, users and the public.

78. Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation Plaintiff, the CWC Content, Baby Shark Products and Baby Shark Marks.

79. As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiff by depriving Plaintiff of sales of its Baby Shark Products and by depriving Plaintiff of the value of its Baby Shark Marks as a commercial asset in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of the Baby Shark Marks.

80. Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

## FOURTH CAUSE OF ACTION
### (Federal Copyright Infringement)
### [17 U.S.C. § 501(a)]

81.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

82.     Plaintiff is the exclusive owner of the Baby Shark Works.

83.     Defendants had actual notice of Plaintiff's exclusive rights in and to the Baby Shark Works.

84.     Defendants did not attempt and therefore inherently failed to obtain Plaintiff's consent or authorization to use, manufacture, reproduce, copy, display, prepare derivative works of, distribute, sell, transfer, rent, perform and/or market Plaintiff's Baby Shark Products and/or Baby Shark Works.

85.     Without permission, Defendants knowingly and intentionally reproduced, copied, and displayed the Baby Shark Works by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling infringing products which bear such Baby Shark Works, or artwork that is, at a minimum, substantially similar to the Baby Shark Works.

86.     Defendants' unlawful and willful actions as alleged herein constitute infringement of the Baby Shark Works, including Plaintiff's exclusive rights to reproduce, distribute and/or sell such Baby Shark Works in violation of 17 U.S.C. § 501(a).

87.     Defendants' knowing and intentional copyright infringement, as alleged herein, has caused substantial and irreparable harm to Plaintiff in an amount as yet unknown but to be proven at trial, for which Plaintiff has no adequate remedy at law, and unless enjoined, Defendants will continue to cause, substantial and irreparable harm to Plaintiff.

88.     Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief, Plaintiff's actual damages and Defendants' profits in an amount to be proven at trial and enhanced discretionary damages for willful copyright infringement, and reasonable attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**(Unfair Competition)**
**[New York Common Law]**

89.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

90.    By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products, Defendants have traded off the extensive goodwill of Plaintiff and its Baby Shark Products to induce, and did induce and intend and will continue to induce, customers to purchase their Counterfeit Products, thereby directly competing with Plaintiff.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

91.    Defendants' advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products was and is in violation and derogation of Plaintiff's rights and is likely to cause confusion and mistake, and to deceive consumers and the public as to the source, origin, sponsorship or quality of Defendants' Counterfeit Products.

92.    Defendants knew, or by the exercise of reasonable care should have known, that their advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products and their continuing advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products would cause confusion and mistake, or deceive purchasers, users and the public.

93.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion and mistake, and to deceive, in blatant disregard of Plaintiff's rights, and for the wrongful purpose of injuring Plaintiff, and its competitive position while benefiting Defendants.

94.     As a direct and proximate result of Defendants' aforementioned wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of its Baby Shark Products in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law, and Plaintiff has been and will continue to be deprived of the value of its Baby Shark Marks as a commercial asset in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law.

95.     As a result of Defendants' actions alleged herein, Plaintiff is entitled to injunctive relief, an order granting Plaintiff's damages and Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants, inclusive, and each of them, as follows:

A.     For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a)(3) and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B.     In the alternative to Defendants' profits and Plaintiff's actual damages, enhanced

discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c) in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale or distributed, as the Court considers just, which Plaintiff may elect prior to the rendering of final judgment;

C.      For an award of Plaintiff's actual damages and Defendants' profits, pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial for willful copyright infringement of the Baby Shark Works under 17 U.S.C. § 501(a);

D.      In the alternative to Plaintiff's actual damages and Defendants' profits for copyright infringement of the Baby Shark Works pursuant to 17 U.S.C. § 504(b), for statutory damages of up to $150,000 per infringement pursuant to 17 U.S.C. § 504(c) for willful copyright infringement, which Plaintiff may elect prior to the rendering of final judgment;

E.      For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for willful trademark infringement of Plaintiff's federally registered Baby Shark Marks, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

F.      For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

G.      For an award of damages to be proven at trial for common law unfair competition;

H.      For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives,

directors, attorneys, successors, affiliates, assigns and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

    i.    manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

    ii.    directly or indirectly infringing in any manner Plaintiff's Baby Shark Marks and/or Baby Shark Works;

    iii.    using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Baby Shark Marks and/or Baby Shark Works to identify any goods or services not authorized by Plaintiff;

    iv.    using Plaintiff's Baby Shark Marks and/or Baby Shark Works or any other marks and/or artwork that are confusingly or substantially similar to the Baby Shark Marks and/or Baby Shark Works, on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

    v.    using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of

any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities by Plaintiff;

vi. engaging in the unlawful, unfair or fraudulent business acts or practices, including, without limitation, the actions described herein, including the of advertising and/or dealing in any Counterfeit Products;

vii. engaging in any other actions that constitute unfair competition with Plaintiff;

viii. engaging in any other act in derogation of Plaintiff's rights;

ix. from secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products; (ii) any computer files, data, business records, documents or any other records or evidence relating to Defendants' User Accounts or Merchant Storefronts, Defendants' Assets from or to Defendants' Financial Accounts and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

x. from secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying any of Defendants' Assets from or Defendants' Financial Accounts until further ordered by this Court;

xi. effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any final judgment or order in this action;

xii. providing services to Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued

operation of Defendants' User Accounts and Merchant Storefronts; and

xiii.   instructing any other person or entity to engage or perform any of the activities referred to in subparagraphs (i) through (xii) above; and

I.     For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Plaintiff for destruction any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe Plaintiff's Baby Shark Marks and/or Baby Shark Works, or bear any marks or artwork that are confusingly or substantially similar to the Baby Shark Marks and/or Baby Shark Works;

J.     For an order of the Court requiring that Defendants deliver up for destruction to Plaintiff any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendants that infringe Plaintiff's Baby Shark Marks and/or Baby Shark Works, or bear any marks or artwork that are confusingly or substantially similar to the Baby Shark Marks and/or Baby Shark Works pursuant to 15 U.S.C. § 1118;

K.     For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, sale and/or otherwise dealing in the Counterfeit Products as described herein, including prejudgment interest;

L.     For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Plaintiff;

28

M.      For an award of exemplary or punitive damages in an amount to be determined by the

Court;

N.      For Plaintiff's reasonable attorneys' fees;

O.      For all costs of suit; and

P.      For such other and further relief as the Court may deem just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a trial by jury on all claims.

Dated: July 8, 2021                          Respectfully submitted,

EPSTEIN DRANGEL LLP

BY:       Danielle S. Futterman (DY 4228)
          dfutterman@ipcounselors.com
          Jason M. Drangel (JD 7204)
          jdrangel@ipcounselors.com
          Ashly E. Sands (AS 7715)
          asands@ipcounselors.com
          60 East 42nd Street, Suite 2520
          New York, NY 10165
          Telephone:     (212) 292-5390
          Facsimile:     (212) 292-5391
          *Attorneys for Plaintiff*
          *Smart Study Co., Ltd.*