**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Smart Study Co., Ltd, <br><br> Plaintiffs, <br> v. <br><br> Acuteye-US, et al. <br><br> Defendants. | Case No.: 21-cv-5860 (GHW) <br><br> Judge: Gregory H. Woods |

**DEFENDANT LI TENG (d/b/a TOPIVOT) MOTION TO DISSOLVE THE
PRELIMINARY INJUNCTION**

Defendant Li Teng (d/b/a Topivot on Amazon.com) ("Mr. Teng"), respectfully move this Court to dissolve the Preliminary Injunction Order (Dkt 16) and in support thereof states the following:

## I.      INTRODUCTION

This case is one of a burgeoning number of cases being filed in this District that all follow a nearly uniform pattern. Plaintiffs, purporting to own certain intellectual property, sue large groups of foreign defendants for infringement. Plaintiffs institute these cases *ex parte*, seeking first a restraint on defendants' internet stores and accounts and then a preliminary injunction. On the expectation that the majority of defendants—all foreign businesses—may not realize immediately that they have been sued in this District and may be unfamiliar with the American legal system—these plaintiffs finally move for default judgment, hoping that most of these foreign defendants will simply settle or take the default. Mr. Teng is the latest such defendant to be swept up in these kinds of cases. Mr. Teng is not a counterfeiter as Plaintiffs purport in their Complaint. As a non-resident of the State of New York, this Court's

1

preliminary injunction and asset restraint has unreasonably restrained Mr. Teng's Amazon account and continues to cause him irreparable harm.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

On July 8, 2021, Plaintiffs Smart Study Co., Ltd. filed their Complaint against individuals and entities that operated online storefronts, including that of Amazon.com. *See* Complant. (Dkt 4). Plaintiffs allege that Mr. Teng committed trademark infringement, counterfeiting, false designation of origin, and violation of New York law regarding trademark infringement, trademark dilution, unfair competition, deceptive acts and practices, and cyberpiracy under the Federal anti-cybersquatting consumer protection act. Also on July 8, 2021, Plaintiffs filed an *ex parte* Motion for a Temporary Restraining Order, seeking to enjoin all defendants in the lawsuit from manufacturing importing, distributing, offering for sale, or selling any counterfeit versions of Plaintiffs' products as well as freezing all of the defendants' accounts with their associated storefronts. (Dkt. 10-14) (hereinafter the "TRO"). The Court granted the Plaintiffs' Motion for a TRO on July 9, 2021. (Dkt. 14). On July 15, 2021, Plaintiffs filed their Motion for Entry of a Preliminary Injunction, which this Court granted on July 30, 2021. (Dkt. 15-16).

Mr. Teng now moves this Court to lift the preliminary injunction restraining his Amazon account on the basis that this Court lacks personal jurisdiction over Mr. Teng to enforce the preliminary injunction based on the insufficient facts that Plaintiffs have thus alleged.

## <u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISSOLVE THE</u>
## <u>PRELIMINARY INJUNCTION</u>

Mr. Teng respectfully submits this Memorandum of Law in support of his motion to dissolve the preliminary injunction:

### III.    ARGUMENT

### A.  LEGAL STANDARD TO LIFT A PRELIMINARY INJUNCTION

A "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997); *Juicy Couture, Inc. v. Bella Intern. Ltd.,* 930 F. Supp. 2d 489, 498 (S.D.N.Y. 2013). "Injunctive relief should be narrowly tailored to fit specific legal violations. Accordingly, an injunction should not impose unnecessary burdens on lawful activity." *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.,* 317 F.3d 209, 220 (2d Cir. 2003), *quoting, Waldman Pub. Corp. v. Landoll, Inc.,* 43 F.3d 775, 785 (2d Cir. 1994).

"A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of the injunction; (3) that the balance of hardships tips in the movant's favor; and (4) that the public interest is not disserved by the issuance of the injunction. *Juicy Couture,* 930 F. Supp. 2d at 498 *citing Salinger v. Colting,* 607 F.3d 68, 79-80 (2d Cir. 2010); *Bulman v. 2BKCO, Inc.,* 882 F.Supp.2d 551, 557 (S.D.N.Y. 2012). The strength, or lack thereof, of Plaintiffs' likelihood of success on the merits affects the balance of harms. *New York League of Advocates for the Developmentally Disabled v. New York Department of Human Services,* 60 F. Supp. 856, 889 (N.D. Ill. 2014). A preliminary injunction may be lifted if this Court is to find lack personal jurisdiction over the defendant upon which it was entered against. *See, e.g., Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameries,* 2004 WL 2199547, at *18 (S.D.N.Y. Sept. 29, 2004). "[B]efore any

finding of liability or sanction against a non-party,…questions of personal jurisdiction may be properly raised." *Gucci American, Inc. v. Weixing Li,* 768 F.3d 122, 130 (2d Cir. 2014).

## B. PLAINTIFFS CANNOT ESTABLISH THIS COURT'S PERSONAL JURISDICTION OVER MR. TENG

"As in any action, the Court cannot reach the merits of the plaintiff's claims until it is satisfied that it has jurisdiction over both the subject matter and the defendants themselves." *Mrs. U.S. Nat. Pagenat, Inc. v. Miss U.S. Organization, LLC,* 875 F. Supp. 2d 211, 220 (W.D.N.Y. 2012) citing *In re Rationis Enters., Inc. of Panama,* 261 F.3d 264, 267-68 (2d Cir. 2001); *see also In re Rationis Enters., Inc. of Panama,* 261 F.3d 264, 270 (2d Cir. 2001) ("A court may not grant a final, or even an interlocutory, injunction over a party over whom it does not have personal jurisdiction."). Plaintiffs have the burden of establishing personal jurisdiction. *In re Terrorist Attacks on Sept. 11, 2001,* 714 F.3d 659, 673 (2d Cir. 2013). This Court may exercise personal jurisdiction over a non-resident defendant only if (1) a New-York long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with the requirements of the Fourteenth Amendment's Due Process Clause. *Chloe v. Queen Bee of Beverly Hills, LLC,* 616 F.3d 158, 170 (2d Cir. 2010). "The second analysis has two related components: the "minimum contacts" inquiry and "reasonableness" inquiry. With respect to minimum contacts, the court must determine whether the defendants have sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Mrs. U.S. Nat. Pageant,* 875 F. Supp. 2d at 219, *citing, International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). In this jurisdiction, "[t]he New York long-arm statute does not extend in all respects to the constitutional limits established by *International Shoe*, and its progeny". *Mrs. U.S. Nat. Pagenat, Inc. v. Miss U.S. Organization, LLC,* 875 F. Supp. 2d 211, 220 (W.D.N.Y. 2012) *citing Banco Ambrosiano, S.P.A. v. Artoc Bank & Trust Ltd.,* 62 N.Y.2d 65, 71 (1984).

### i.  N.Y. C.P.L.R. § 302(a)(1) does not reach Mr. Teng

Plaintiffs attempt to utilize N.Y. C.P.L.R. § 302(a)(1) as the necessary New York long-arm statute in order to establish this Court's personal jurisdiction over Mr. Teng. (*See* Plaintiffs' Complaint at ¶ 3]; *see Spin Master Ltd., v. 158,* 463 F. Supp. 3d 348, 362 (S.D.N.Y. 2020). Section 302(a)(1) states that "a court may exercise personal jurisdiction over any non-domiciliary…who in person or through an agent…transacts any business within the state or contracts anywhere to supply goods or services in the state." Plaintiffs must meet two requirements to establish personal jurisdiction under Section 302(a)(1): "(1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Eades v. Kennedy PC Law Offices,* 799 F.3d 161, 168 (2d Cir. 2015), *quoting, Licci v. Lebanese Canadian Bank,* 732 F.3d, 161, 168 (2d Cir. 2013). Under the first prong, a non-domiciliary defendant need not be physically present in New York to "transact business," so long as the defendant has engaged in "purposeful activity,". *Spin Master,* 463 F. Supp. 3d at 362. The second prong of Section 302(a)(1) requires an "articulable nexus or substantial relationship between the business transaction and the claim asserted," but a causal relationship is not required. *Gucci Am., Inc. v. Weixing Li,* 135 F. Supp. 3d 87, 93 (S.D.N.Y. 2015).

Plaintiffs cannot establish at least the first prong of the Section 302(a) requirement that Mr. Teng "purposefully availed" himself to this forum's personal jurisdiction. Mr. Teng never sold, offered for sale, promoted, or even knew of the existence of any of the alleged infringing activity that Plaintiffs' Complaint references. Mr. Teng Decl. at ¶ 11. "Personal jurisdiction is an individualized exercise." *Spin Master,* 463 F. Supp. 3d at 362. Plaintiffs cannot lump all of the defendants together for purposes of alleging connections to New York. *Cenage Learning, Inc. v. Buckeye Books,* 531 F. Supp. 2d 596, 599 (S.D.N.Y. 2008). Indeed, "[w]ithout

allegations that there was purposeful availment of New York, such as through actual sales to New York or even perhaps ***active solicitation of the New York market***, it cannot be said that a defendant "transacted business" under N.Y. C.P.L.R. § 302(a)(1) so as to satisfy personal jurisdiction." *Spin Master,* 463 F. Supp. 3d at 362; *Astor Chocolate Corp. v. Elite Gold Ltd.,* 510 F. Supp. 3d 108, 126 (S.D.N.Y. 2020).

Mr. Teng has produced evidence and clearly demonstrated his innocence and ignorance to the alleged infringing activity that is presently at issue. *See generally* Mr. Teng Decl. Mr. Teng was completely unaware of the commercial activities that were being undertaken by the other Defendants in this matter. Mr. Teng has no relationship with any of the co-defendants, companies or online stores in this lawsuit. Mr. Teng Decl. at ¶ 2.

Plaintiffs have not pled the necessary facts, and do not have the necessary evidence, to demonstrate that Mr. Teng knew, or reasonably should have known, that the alleged infringing activity was occurring by the other defendants in this case. There is no plausible claim for contributory infringement liability let alone a specific action directed at the state of New York to satisfy personal jurisdiction over Mr. Teng. *See, Tiffany (NJ) Inc. v. Ebay, Inc.,* 600 F.3d 93, 104-105 (2d Cir. 2010), *citing, Polymer Tech, Corp. v. Mimran,* 975 F.2d 58, 64 (2d Cir. 1992) ([the Court said that "[a] distributor who intentionally induces another to infringe a trademark, or continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, is contributorially liable for any injury."); *Inwood Labratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844 (1982). Plaintiffs is required to demonstrate Mr. Teng's purposeful availment, not the purposeful availment of the other defendants. While Plaintiffs will undoubtedly assert that an individual's single sale of an alleged infringing product into the forum jurisdiction constitutes the requisite "purposeful availment" required for N.Y. C.P.L.R. § 302's application, *see Chloe v. Queen Bee of Beverly Hills, LLC,* this cannot satisfy Plaintiffs' burden as to Mr. Teng. 619 F.3d 158, 170 (2nd Cir.2010); *see also Spin Master,* 463 F. Supp. 3d at 364 (suggesting that plaintiffs cannot rely on the purposeful availment of other defendants

to establish personal jurisdiction over defendants who have not done so). It is Plaintiffs' burden to establish "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 246-47 (2d Cir. 2007) (emphasis added). Accordingly, Plaintiffs cannot establish Mr. Teng's purposeful availment to this Court's jurisdiction under N.Y. C.P.L.R. § 302(a)(1) because Mr. Teng never transacted any business in this jurisdiction. This Court therefore may not exercise personal jurisdiction over Mr. Teng as Plaintiffs have not alleged a viable New York long-arm statute required by the Second Circuit. *Chloe,* 616 F.3d at 170. The preliminary injunction should be lifted with respect to Mr. Teng as this Court cannot exercise proper jurisdiction over him. *See, e.g., Northrop Grumman,* 2004 WL 2199547, at *18.

ii.     **The Court's exercise of personal jurisdiction over Mr. Teng would offend constitutional protections of due process under the 14th Amendment.**

While Plaintiffs' failure to establish jurisdiction under N.Y. C.P.L.R. § 302(a)(1) is sufficient to negate this Court's personal jurisdiction over Mr. Teng, constitutional due process also requires that this Court consider whether Mr. Teng has (1) sufficient minimum contacts with New York such that the maintenance of this action is (2) reasonable: "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.,* 326 U.S. at 316. By finding a lack of sufficient contacts in the analysis regarding N.Y. C.P.L.R. § 302, Plaintiffs have already failed the "minimum contacts" requirement necessary to establish personal jurisdiction over Mr. Teng. *Chloe v. Queen Bee of Beverly Hills,* LLC, 616 F.3d 158, 164 (2d Cir. 2010); *Grand River Enters. Six Nations, Ltd. v. Pryor,* 425 F.3d 158, 166 (2d Cir. 2005).

Turning to the "reasonableness" requirement, the

due process requirement for personal jurisdiction…protects a person without meaningful ties to the forum state from being subjected to binding judgments within its jurisdiction. By requiring "fair warning" that an individual's activities in a state may subject him to suit there, the Due Process Clause protects that person's liberty interest and "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 567 (2d Cir. 1996), *citing, Int'l Shoe, 326 U.S. at 316; Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471-72, (1985) (quotation marks omitted). Plaintiffs cannot show how subjecting Mr. Teng to this Court's personal jurisdiction comports with fair play and substantial justice. In making this determination, the Court will consider: (i) the burden of a defendant of having to litigate in the forum; (ii) the interests of the forum; (iii) the plaintiff's interest in obtaining relief; (iv) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (v) the shared interest of the several states in furthering fundamental substantive social policies. *Metropolitan Life,* 84 F.3d at 568. While none of these factors is dispositive, the most important factors to consider are: (i) the interests of the states involved and (i) the relative convenience of litigating in that forum. *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.,* 480 U.S. 102, 113 (1987). "[I]n assessing whether it may exercise jurisdiction over a particular defendant, a court must weigh the relative strengths and weaknesses of each requirement—that is, depending upon the strength of the defendant's contacts with the forum state, the reasonableness component of the constitutional test may have a greater or lesser effect on the outcome of the due process inquiry." *Metropolitan Life,* 84  F.3d at 568.

In the present case, Mr. Teng would be significantly burdened with having to litigate the merits of the case in New York. Mr. Teng is a resident of the People's Republic of China. Mr. Teng Decl. at ¶ 2. Mr. Teng has no office, employees, or agents in New York, and the Mr. Teng would face considerable additional expenditures by having to remotely manage local counsel, conduct further discovery, and proceed through trial. *Id.* Further, New York' interest

in adjudicating the dispute tips against exercising personal jurisdiction: Plaintiffs claims are founded in federal trademark infringement, copyright infringement, unfair competition, with its claims for violations of New York trademark and competition law being derivative of or ancillary to its federal claims and based on the exact same facts. Still further, Plaintiffs Smart Study Co., Ltd. is a Korean limited company with a principal place of business at 94, Myeongdal-ro, Seocho-gu, Seoul, Republic of Korea, South, 06668. (Dkt. 4 at ¶5). Litigating in this forum would not serve the interstate judicial system's interest in obtaining the most efficient resolution of the controversy as so little - if anything - happened here: Evidence supporting Plaintiffs' claims would theoretically come from individuals with no ties to New York and/or from records of a company located in a state other than New York. The only things present in New York are (some of) Plaintiffs' lawyers, and a defendant is not subject to jurisdiction solely because the plaintiff allegedly suffered injury in the forum state. *Eastboro Foundation Charitable Trust v. Penzer,* 950 F. Supp. 2d 648, 664 (S.D.N.Y. 2013) (arguing that the situs of injury is where the injury originated, not where its effects were felt).

On review, no factor tips in favor of exercising personal jurisdiction. All factors tip against exercising personal jurisdiction, and thus this court exercising personal jurisdiction over Mr. Teng would offend traditional notions of fair play and substantial justice. *Metropolitan,* 84 F.3d at 573. The constitutional requirements of due process strongly suggest that this Court may not hold proper personal jurisdiction over Mr. Teng.

## C.  MR. TENG WAS NOT SERVED WITH ADEQUATE PROCESS PRESCRIBED BY THE FEFERAL RULE OF CIVIL PROCEDURE.

Every defendant must be served with a copy of the complaint and summons in accordance with Rule 4. Fed. R. Civ. P. 4(b), 4(c)(1). Mr. Teng, is a Chinese citizen with no physical presence in the United States. Rule 4(f) authorizes two methods of service at issue here. *First*, service may be made "by any internationally agreed means of service that is

reasonably calculated to give notice, such as those authorized by the Hague Convention." Fed. R. Civ. P. 4(f)(1). *Second*, Rule 4(f)(3) authorizes service "by other means not prohibited by international agreement, as the court orders."

Both the United States and China are signatories to the Hague Service Convention. The Hague Service Convention has the force of federal law and limits available methods of service under Fed. R. Civ. P. 4(f)(3). Intended to simplify and standardize serving process abroad, the Hague Service Convention "specifies certain approved methods of service and 'preempts inconsistent methods of service' wherever it applies." *Water Splash, Inc. v. Menon,* 137 S. Ct. 1504, 1507 (2017) (*quoting Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 698 (1988) (noting that "compliance with the Convention is mandatory in all cases to which it applies.")); *see also Brockmeyer v. May,* 383 F.3d 798, 801 (9th Cir. 2004); *Ackermann v.Levine,* 788 F.2d 830, 838 (2nd Cir. 1986).

Service of process by email is inappropriate here since (1) the Hague Service Convention is applicable to this case; and (2) Plaintiffs failed to serve Mr. Teng properly under the Hague Service Convention.

**1. The Hague Service Convention is Applicable to This Case Since Plaintiffs Can Take Reasonable Effort to Find Mr. Teng's Physical Address.**

Courts look to Article 1 to determine whether the Hague Service Convention applies. *Schlunk,* 486 U.S. at 699. Article 1 specifies the Hague Service Convention's scope. The first sentence states the "Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." *Id.* (quoting Article 1 of the Hague Service Convention, 20 U.S.T. at 362). Where it applies, compliance with the Hague Service Convention is "mandatory." *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 698–99, 108 S. Ct. 2104, 2107–08 (1988). The purpose of the Hague Service Convention is "to assure that defendants sued in foreign

jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." *Id.* at 486 U.S. at 698, 108 S. Ct. at 2107. Article 1 further states the Hague Service Convention does not apply "where the address of the person to be served with the document is not known." Art. 1, 20 U.S.T. at 362.

Courts have interpreted the second sentence of Article 1 consistently. A plaintiff cannot close its eyes to the obvious to avoid the Hague Service Convention; the plaintiff must make reasonably diligent efforts to learn a defendant's mailing address. *See, e.g., Advanced Access Content Sys. Licensing Admin., LLC v. Shen,* 2018 WL 4757939, at *4– 5 (S.D.N.Y. Sept. 30, 2018); *Progressive Se. Ins. Co. v. J & P Transp.,* 2011 WL 2672565, at *3 (N.D. Ind. July 8, 2011) (*citing Opella v. Rullan,* 2011 WL 2600707, at *5 (S.D. Fla. June 29, 2011)); *Compass Bank v. Katz,* 287 F.R.D. 392, 394–95 (S.D. Tex. 2012) (collecting and discussing cases).

Mr. Teng uploaded his true and correct address to Amazon.com when he registered his account with Amazon. Mr. Teng Decl. at ¶ 4. Moreover, a true and correct copy of Mr. Teng's business information posted on Amazon.com is attached herein as Exhibit 1. Thus, this is not a case "where the address of the person to be served with the document is not known". Plaintiffs can obtain Mr. Teng's physical addresses from Amazon.com because Mt. Teng complies with Amazon's requirement that each store needs to provide a valid physical address. Amazon has physical addresses of stores operated on it and thus Mr Teng's address was readily accessible to Plaintiff. A brief review of publicly available information or by asking Mr. Teng directly, could have confirmed it to be correct. Having this important basic information, Plaintiff still refused to conduct the most basic investigation or make any effort to confirm whether Mr Teng's publicly disclosed address was correct. Therefore, Plaintiffs have failed to carry their burden to show that Mr. Teng's address was unknown. Consequently, the Hague Service Convention applies in this case.

2.   **Plaintiffs Failed to Serve Mr. Teng Properly under the Hague Service Convention.**

The Supreme Court of the United States has stated that the drafters of the Hague Service Convention intended to prohibit a method of service not mentioned in its text. The Supreme Court took a broad view of the Convention in 1988, holding that it "pre-empts inconsistent methods of service . . . [wherever] it applies." *Schlunk, supra,* 486 U.S. at 699. The Court reaffirmed that holding, quoting this language verbatim, in 2017. *Water Splash,* 137 S. Ct. at 1507.

The Hague Convention permits service only by the following means: via a central authority (Articles 2-7), diplomatic and consular agents (Articles 8-9), mail or through a judicial official of the State of destination if the destination State does not object (Article 10), methods allowed by other applicable international agreement (Article 11), and other means as allowed by the internal laws of the destination State (Article 19). *See Water Splash Inc.,* 137 S. Ct. at 1508 (reviewing permitted service methods). "The legal sufficiency of a formal delivery of documents must be measured against some standard. The Convention does not prescribe a standard, so we almost necessarily must refer to the internal law of the forum state." *Schlunk,* 486 U.S. at 700.

"Compliance with the Hague Service Convention is mandatory when serving a defendant who resides in a foreign country that is a signatory to the convention." *SeaCube Containers LLC v. Compass Containers & Shipping Services Ltda.,* 427 F. Supp. 3d 497, 500 (S.D.N.Y. 2019) (*quoting Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 699, (1988)). Because China is a signatory to the Hague Convention, "that international agreement is the exclusive means through which service can be effectuated when serving a [Chinese] defendant." *Id.; see also RSM Prod. Corp. v. Fridman,* 06 CIV. 11512 (DLC), 2007 WL 1515068, at *1 (S.D.N.Y. May 24, 2007) ("Service on a foreign defendant pursuant to the Hague Convention . . . is mandatory when serving a defendant who resides in a foreign country

that is a signatory to the convention.") (*citing Burda Media, Inc. v. Viertel,* 417 F.3d 292, 299-300 (2d Cir.2005)).

The alternative service purportedly effected on Mr. Teng was based on an order obtained by Plaintiff's inaccurate representations of the law and facts including an assertion that "None of the Defendants have disclosed their mailing addresses." Mr. Teng's address is publicly available. Plaintiff's declaration fails to identify any meaningful investigation as to Mr. Teng's address or any effort to perform service of process on Mr. Teng pursuant to the Hague Convention.

Another federal court found that China's Article 10(a) objection precludes email service. *Luxottica Grp. S.p.A. v. Partnerships & Unincorporated Associations Identified on Schedule "A",* 391 F. Supp. 3d 816, 827 (N.D. Ill. 2019), *reconsideration denied in part,* No. 18 CV 2188, 2019 WL 2357011 (N.D. Ill. June 4, 2019).

 "Email service of [a China-based] online business defendant is warranted when the defendant has no readily discoverable physical address, conducts business over the Internet, and uses email regularly in contacting customers." *Gianni Versace, S.P.A v. Yong Peng, et al.,* No. 18 C 5385, R. 70 at 2; *citing Rio Props., Inc.,* 284 F.3d at 1017-18. Here, unlike the defendant in *Gianni Versace,* Mr. Teng has a readily discoverable physical address listed on Amazon web page. Business Info., Exhibit 1. Moreover, the discoverable physical address is the true and correct address of Mr. Teng. Plaintiff did not take any action to serve Mr. Teng by any means permitted by the Hague Convention.

For the above stated reasons, Mr. Teng has not been served with process in compliance with the Hague Service Convention as prescribed by the Federal Rules of Civil Procedure.

## IV. CONCLUSION

For the reasons set forth herein, the preliminary injunction (Dkt 16) should be lifted in its entirety. Mr. Teng should be dismissed from this action for lack of this Court's personal jurisdiction. In the alternative, Plaintiffs should be Ordered to plead sufficient factual allegations to support its contention that this Court can exercise personal jurisdiction over Mr. Teng specifically.

Respectfully submitted this 4th day of October 2021.

/s/*Li Teng*
_____
Li Teng d/b/a Topivot

**<u>DECLARATION OF LI TENG IN SUPPORT OF MOTION TO DISSOLVE THE</u>**

**<u>PRELIMINARY INJUNCTION</u>**

I, LI TENG, hereby declare under penalty of perjury under the laws of the United States that the following Is true and correct to the best of my knowledge, information and belief.

1.　　I am a sole proprietor doing business as Topivot on Amazon.com, and a Real Party in Interest in this action. I have personal knowledge of the facts stated herein and if called upon as a witness, I could and would competently testify to the below facts which are personally known to me.

2.　　I am a citizen and resident of China and I am over the age of 18. I have never been to New York or the United States. I do not directly conduct any regular business with any person or any company located in New York, except to the extent that products ordered and shipped to Amazon for fulfillment by Amazon are ultimately shipped by Amazon to New York. I operate a small business in China that has no business relationship with any other company or online store. I have no offices or employees anywhere in the United States. I only have an online store on Amazon, and the store sells a variety of products.

3.　　The true and correct address for service of process to Li Teng is "Unit9 #509 JFH3 Ind park, Bulong St. Bantian Ave., Shenzhen city, Guangdong Province, 518129 CN."

4.　　I was directly involved in the process of opening the "Topivot" storefront at Amazon.com. As Part of this process, Amazon.com requested, and I provided, information regarding Li Teng, including the address which I provided as "Unit9 #509 JFH3 Ind park, Bulong St. Bantian Ave., Shenzhen city, Guangdong Province, 518129 CN."

5.　　<u>Exhibit 1</u> is a true and correct copy of a screenshot containing Li Teng's seller information as listed on Amazon.com. This page is public information and can be reached at: https://www.amazon.com/sp?_encoding=UTF8&asin=&isAmazonFulfilled=1&isCBA=&ma rketplaceID=ATVPDKIKX0DER&orderID=&protocol=current&seller=A2CH6377ZHWJV Y&sshmPath=

6.    Exhibit 1 displays under "Detailed Seller Information," the address of Li Teng as "Unit9 #509 JFH3 Ind park, Bulong St. Bantian Ave., Shenzhen city, Guangdong Province, 518129 CN."

7.    At no point in time was I informed or did I have knowledge of any person representing Plaintiff who requested the address information of Li Teng for the purposes of Hague Service.

8.    On July 21, 2021, in China, I was notified by Amazon that some product listing had been removed. I received that notification through the Amazon Seller Central platform. Amazon Seller Central is a platform that connects merchants and brands directly with customers, and it is also how Amazon communicates with merchants to provide notifications about our stores and our products. Over time, I found that the best way to communicate with Amazon and customers is through Amazon Seller Central— not the e-mail address I registered with Amazon. That is why, over time, I checked that e-mail less and less frequently, relying on Amazon Seller Central instead for messages relating to the store. Starting in about May 2021, my e-mail inbox was filled up, but I was using Amazon Seller Central almost exclusively so I did not notice.

9.    On July 23, 2021, I received from Amazon Seller Central a notice that the funds approximately US$ 22,464 (the "Operating Capital") had also been placed on hold (the "Amazon Notice"). The Operating Capital includes revenue from sales of all products. The Operating Capital is used to pay operating expenses such as storage costs for products shipped to Amazon's warehouse. English is not my first language, but from what I could tell from the Amazon Notice, it appeared that someone somewhere in the United States was raising some intellectual property infringement claim against Li Teng. Beyond that, I did not understand from the Amazon Notice that I was required to do anything in a U.S. court. Because the products were delisted from Amazon, I stopped selling them, so I thought that this was an issue to fix with Amazon, not in court.

10.     To find out what was causing the delisting of my products and the restraint on the Operating Capital, I tried to access my e-mail, thinking that something sent to the e-mail address might have more information. By this point, my e-mail inbox was full and had not been accepting new e-mails. On August 15, 2021, I tried to upgrade my e-mail service in an attempt to access past e-mails, but the new e-mail service provider told me that e-mails sent before August 15, 2021 could no longer be recovered, even with an upgrade. After trying as best I could to fix these problems on my own, it seemed from the small amount of information I had in the Amazon Notice that I would need to consult a lawyer for advice.

11.     The first time I received a copy of the Complaint was on August 30, 2021 when I obtained a copy from the PACER website. It was also on August 30, 2021 that I first learned that a Preliminary Injunction had been entered against Li Teng. Until August 30, 2021, I did not know where in the United States I was being sued, was unsure of exactly what claims were being made against me and was unsure of who was suing. When I learned on August 30 what Plaintiffs were claiming, I was stunned that I was accused of being part of a counterfeiting operation, working with other counterfeiters. I am not part of a counterfeiting operation. I am not working with the other defendants to counterfeit. I run an honest, small business in China, and it is not in the business of counterfeiting.

12.     None of the orders was shipped directly from my Amazon store. Instead, fulfillment is by Amazon, I ship products to an Amazon warehouse, and Amazon does the shipping to the customer. I understand that Plaintiffs submitted a sales record that appears to show that someone in New York ordered products from me. I checked my records and can confirm that that purchase was never completed and that order was not filled. That sales record does not reflect an actual sale.

13.     Because of Plaintiffs' lawsuit, I cannot make use of my Operating Capital, which is a significant asset. I understand that in this case, Plaintiff put up a $5,000 security bond. The Store's Operating Capital being restrained is about four times Plaintiff's bond. All

of the revenue being earned is currently inaccessible, but the Store is still incurring operating

costs. That is why this case and the restraint on the Operating Capital is such a hardship to me.

I declare under penalty of perjury that the foregoing is true and correct to the best of

my knowledge, information and belief and was signed by me on the date below.

Respectfully submitted this 4th day of October 2021.

/s/*Li Teng*
_____
Li Teng d/b/a Topivot

# Exhibit 1



## Topivot

Topivot storefront

★★★★★   99% positive in the last 12 months (75 ratings)

Topivot is committed to providing each customer with the highest standard of customer service.

Have a question for Topivot?

Ask a question

---

**Detailed Seller Information**

**Business Name:** Li Teng
**Business Address:**
Unit#509 JFH3 Ind park, Bulong St. Bantian Ave.
Shenzhen city
Guangdong Province
518129
CN

| | Feedback | Returns & Refunds | Shipping | Policies | Help | Gift Wrap | Products |

| | | | 30 days | 90 days | 12 months | Lifetime |
|---|---|---|---|---|---|---|
| ★★★★★ "Cute and fun decorations. Plates are medium weight - we doubled in order to handle heavy food. Fine strength for desserts. Attractive design! " | | Positive | 100% | 100% | 99% | 99% |
| By Patricia Marvin on September 19, 2021. | | Neutral | 0% | 0% | 1% | 0% |
| ★★★★★ "So pretty and price was good " | | Negative | 0% | 0% | 0% | 1% |
| By kelly labiche on September 10, 2021. | | Count | 2 | 13 | 75 | 209 |
| ★★★★★ "Excellent quality! " | | | | | | |
| By Lisa Canale on August 20, 2021. | | | | | | |
| ★★★★★ "Nice plates, well used " | | | | | | |
| By JPG,USA on August 11, 2021. | | | | | | |
| ★★★★★ "Exactly as described " | | | | | | |
| By Rachel on August 7, 2021. | | | | | | |

Previous Next

Leave seller feedback   Tell us what you think about this page

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 4th day of October 2021, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the parties.

_____/s/*Li Teng*_____
Li Teng d/b/a Topivot