USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/21/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

SMART STUDY CO., LTD.,

                              Plaintiff,

                  -against-

ACUTEYE-US, APZNOE-US,
BEIJINGKANGXINTANGSHANGMAOYOUXIAN
GONGSI, BLUE VIVI, BONUSWEN,
CHANGGESHANGMAOYOUXIANGONGSI,
CITIHOMY, CKYPEE, DAFA INTERNATIONAL,
DAZZPARTY, FAMING, GEGEONLY, HAITING$,
HAOCHENG-TRADE, HAPPY PARTY-001,
HEARTLAND GO, HUIBI-US, JOYSAIL, JYOKER-
US1, KANGXINSHENG1, LADYBEETLE, LICHE
CUPCAKE STAND, LVYUN, MARY GOOD SHOP,
NA-AMZ001, NAGIWART, NUOTING, QINGSHU,
QT-US, SALIMHIB-US, SAM CLAYTONDDG,
SENSIAMZ BACKDROP,
SHENZHENSHIXINDAJIXIEYOUXIANGONGSI,
SMASSY US, SMSCHHX, SUJIUMAISUSU,
SUNNYLIFYAU, TELIKE, THEGUARD,
TONGMUMY, TOPIVOT, TUOYI TOYS, UNE
PETITE MOUETTE, WCH- US, WEN MIKE,
WONDERFUL MEMORIES, WOW GIFT,
XUANNINGSHANGWU, XUEHUA INC, XUIYUI7I,
YAMMO202, YICHENY US,
YONGCHUNCHENGQINGMAOYIYOUXIANGON
GSI, YOOFLY, ZINGON US and 老兵俱乐部,

                  Defendants.

------------------------------------------------------------------ X

1:21-cv-5860-GHW

MEMORANDUM
OPINION AND ORDER

GREGORY H. WOODS, United States District Judge:

      Plaintiff Smart Study Co., Ltd. owns multiple federal trademark and copyright registrations

associated with the hit song "Baby Shark."  Plaintiff asserts that the defendants in this case, all of

which are located in China, marketed and sold counterfeit Baby Shark products via their e-

commerce storefronts on Amazon.com.  Plaintiff purported to serve the defendants by email pursuant to Federal Rule of Civil Procedure 4(f).

After a number of those defendants failed to respond timely to Plaintiff's complaint, Plaintiff moved for default judgment.  Because the Court determines that service by email on individuals or entities located in China is not permitted under the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters (the "Hague Convention" or the "Convention") or the Federal Rules of Civil Procedure, the defendants were not properly served in this action.  Accordingly, the Court lacks personal jurisdiction over those defendants, and Plaintiff's motion for default judgment is denied.

## I.     BACKGROUND

### a.  Factual Background

Plaintiff is a "global entertainment company specializing in developing animated gaming content to deliver high-quality entertainment."  Memorandum in Support of Default Judgment, Dkt. No. 79 ("Mem.") at 1; *see also* Complaint, Dkt. No. 4 ("Compl.") ¶ 7.  Plaintiff's "preschool band," Pinkfong, produces modern-day songs and stories for children.  Compl. ¶ 8.  One of Pinkfong's "most successful" songs is "Baby Shark."  *Id.* ¶ 9.   Plaintiff owns multiple federal trademark and copyright registrations related to the Baby Shark products.  *Id.* ¶ 13.

 "Baby Shark" proved to be quite the earworm.  It debuted at No. 32 on the Billboard Hot 100 Chart and had amassed nearly 8.8 billion views as of July 7, 2021.  *Id.* ¶ 9–10.  Plaintiff "developed and initiated an extensive worldwide licensing program" for consumer products related or associated with the Baby Shark concept.  *Id.* ¶ 10.  Baby Shark products, including toys, sound books, and t-shirts, are sold through Pinkfong's website, as well as throughout major retailers and online marketplaces, such as Walmart, Target, and Amazon.  *Id.* ¶ 11.

The defendants in this case[1] are third-party merchants with user accounts that operate merchant storefronts on websites including Amazon.com, the worldwide e-commerce and digital retail marketplace. *Id.* ¶¶ 26–27.  Plaintiff asserts that the defendants "manufactur[e], import[], export [], advertis[e], market[], promot[e], distribut[e], display[], offer[] for sale and/or sell[]" counterfeit Baby Shark products to consumers in the United States.  *Id.* ¶ 35.  All of the defendants are located in China.  *Id.* ¶ 30.

### a.  Procedural History

On July 6, 2021, Plaintiff filed a complaint under seal, asserting claims for violations of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, United States copyright law, 17 U.S.C. § 501, and unfair competition under New York common law.  *See generally* Compl.  Two days later, following a playbook regularly utilized by Plaintiff's counsel, Plaintiff filed an application for a temporary restraining order ("TRO"), as well as an order to show cause as to why a preliminary injunction should not be issued, an order to freeze the defendants' assets that could be used to satisfy an equitable accounting in Plaintiff's favor, an order authorizing expedited discovery, and—as is most relevant here—an order authorizing bifurcated and alternative service.  *See generally* Dkt. No. 10 ("TRO Application").  The request for an order authorizing bifurcated and alternative service sought to serve the defendants by email pursuant to Federal Rule of Civil Procedure 4(f)(3).  *See* Dkt. No. 11 ("TRO Mem.") 21–23.  Specifically, Plaintiff requested to deliver to the defendants' email addresses—which were to be identified by Amazon.com—PDF copies of the Court's TRO order together with the Summons and Complaint, as well as a link to a secure website where the

---

[1] The defendants consist of Acuteye-Us, Apznoe-Us, Beijingkangxintangshangmaoyouxiangongsi, Blue Vivi, Bonuswen, Changgeshangmaoyouxiangongsi, Citihomy, Ckypee, Dafa International, Dazzparty, Faming, Gegeonly, Haiting$, Haocheng-Trade, Happy Party-001, Heartland Go, Huibi-Us, Joysail, Jyoker-Us1, Kangxinsheng1, Ladybeetle, Liche Cupcake Stand, Lvyun, Mary Good Shop, Na-Amz001, Nagiwart, Nuoting, Qingshu, Qt-Us, Salimhib-Us, Sam Claytonddg, Sensiamz Backdrop, Shenzhenshixindajixieyouxiangongsi, Smassy Us, Smschhx, Sujiumaisusu, Sunnylifyau, Telike, Theguard, Tongmumy, Topivot, Tuoyi Toys, Une Petite Mouette, Wch- Us, Wen Mike, Wonderful Memories, Wow Gift, Xuanningshangwu, Xuehua Inc, Xuiyui7i, Yammo202, Yicheny Us, Yongchunchengqingmaoyiyouxiangongsi, Yoofly, Zingon Us, and 老兵俱乐部 (collectively, "Defendants").

defendant could download PDF copies of the Court's order, the summons, and the complaint, and all papers filed in support of Plaintiff's TRO application.  Dkt. No. 10 ("Proposed TRO") §§ IV(A), V(C).

The grounds for Plaintiff's request, as laid out in its memorandum in support, were only that courts have discretion to order service by electronic means as a valid means of alternative service under Federal Rule of Civil Procedure 4(f)(3).  TRO Mem. at 22.  Plaintiff cited *Sulzer Mixpac AG v. Medenstar Industries, Co.*, 312 F.R.D. 329, 330 (S.D.N.Y. 2015) in support of its position.  *Id.*  Plaintiff mentioned the Hague Convention only once (and in a footnote) arguing first that the Hague Convention did not apply at all in this case, and even if it did, "service by email is not prohibited by any international agreement" for defendants located in China.  *Id.* at 22 n.15.  Plaintiff did not cite any out-of-district cases that conclude that service by email on defendants in China is prohibited.  As will be discussed, there are many such cases.

On July 9, 2022, the Court granted Plaintiff's requested relief and authorized Plaintiff to serve the defendants by email pursuant to Federal Rule of Civil Procedure 4(f)(3), which—as will be discussed in detail—permits service "by other means not prohibited by international agreement, as the Court orders."  *See* Dkt. No. 14; *see also* Fed. R. Civ. P. 4(f)(3).  Specifically, the Court allowed Plaintiff to email copies of the Court's order, the Summons, and the Complaint to email addresses associated with the defendants' user accounts and merchant storefronts on Amazon.com.  *See Id.* § IV.  On July 22, 2021, Plaintiff emailed those documents to all but one of the defendants. [2]  Dkt. No. 17.

On July 30, 2022, the Court held a hearing on Plaintiff's motion for a preliminary injunction.  The Court ordered that the injunctive relief previously granted in the TRO would remain in place pending the final hearing and decision of this action or until further order of this

---

[2] Defendant WOW GIFT was served on August 3, 2021.  *Id.*

Court.  Dkt. No. 16.

In October 2021, former defendants YLILLY and Topivot filed motions to dissolve the preliminary injunction.  Dkt. Nos. 23, 26.  In Topivot's reply brief, Topivot raised the argument that the Court lacked personal jurisdiction over Topivot because service via email on Chinese defendants was not permissible under the Hague Convention, and thus was not permissible under Federal Rule of Civil Procedure 4(f).  *See* Dkt. No. 50 at 1–13.

The Court held oral argument on Topivot's motion on December 21, 2021.  At oral argument, Plaintiff's counsel admitted that the "[t]he Hague Convention applie[d]" to the service of defendants in this case because they are "Chinese defendants"—thus contravening their previous argument that the Hague Convention did not apply at all.  *See* Dkt. No. 71 ("Hearing Trans.") at 8:3–9.  Plaintiff's counsel then argued that the "Hague Convention does not prevent service by electronic mail according to the *Sulzer Mixpac* case Judge Rakoff decided in this court." *Id.*  But when the Court asked Plaintiff's counsel to respond to the many cases that have come to the opposite conclusion and determined that service by email on Defendants located in China is not permitted, Plaintiff's counsel did not directly respond.  Instead, counsel apologized for "not having researched" the issue.  *Id.* 19:24–20:13.  Moreover, when the Court asked Plaintiff's counsel to address the Supreme Court's decision in *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1505 (2017)—which, as will be discussed, has critical implications for the service of foreign defendants under the Hague Convention—Plaintiff's counsel stated that they were "unaware of the *Water Splash* decision" (which had been decided more than four years before the December 17, 2021 hearing) and needed the "opportunity to review it."  *See* Hearing Trans. 11:17–12:10.

After oral argument on Topivot's motion, Plaintiff voluntarily dismissed both YLILLY and Topivot from this action.[3]  *See* Dkt. Nos. 67, 69.  But the bell had already been rung.

---

[3] Plaintiff also voluntarily dismissed this action against numerous other defendants from this action.  *See* Dkt. Nos. 20, 35, 82, 84.

The remaining defendants did not respond to Plaintiff's complaint by the deadline established in Federal Rule of Civil Procedure 12.  Thus, on December 21, 2021, the Clerk of Court issued a certificate of default as to the remaining defendants.  Dkt. No. 62.  On February 11, 2022, Plaintiff filed a motion for default judgment and supporting papers against the remaining defendants.  Dkt. Nos. 77–80.  In that motion, Plaintiff again changed tack.  Instead of arguing that the defendants had been properly served only pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiff instead argued that the defendants had been properly served under *either* Federal Rule of Civil Procedure 4(f)(2)—which, as is discussed in more detail herein, permits service by "a method reasonably calculated to give notice . . . unless prohibited by the foreign country's law," *and* Rule 4(f)(3).  Mem. at 6–8.

As to service under Rule 4(f)(2), Plaintiff argued that Article 87 of the Civil Procedure Law of the People's Republic of China ("Article 87") permitted defendants to be served via email "subject to [the defendant's] consent."  *Id.* at 7.  But the translation of Article 87 provided by the Plaintiff clearly stated that "the People's court may serve litigation documents by . . . email."  Dkt. No. 78-7 at 3.  There was no dispute that Plaintiff's counsel, and not a "People's court" had attempted to serve the documents.  Thus, the Court was left with questions as to whether service by email was appropriate under Chinese law.

Therefore, on March 1, 2022, the Court sought the disinterested legal advice of Professor Benjamin Liebman, the Robert L. Lieff Professor of Law and Director of Columbia Law School's Hong Yen Chang Center for Chinese Legal Studies, regarding whether service via email by foreign litigants on individuals located in China was prohibited by the laws of the People's Republic of China.  Dkt. No. 81.  Professor Liebman, along with Geoffrey Sant, a partner and co-chair of Pillbury Winthrop Shaw Pittman LLP's China Practice, provided an amicus brief responding to that question.  *See Brief Of Amici Curiae On Service By Electronic Means On Chinese Residents Under Chinese Law*, Dkt. No. 94 ("Amicus Brief").  Plaintiff submitted a declaration from Mr. Richard K. Wagner,

who is Of Counsel at international law firm Allen & Overy in Hong Kong, responding to that amicus brief. *See* Declaration of Richard K. Wagner, Dkt. No. 98 ("Wagner Decl."). Notably, Mr. Wagner's submission contradicted Plaintiff's argument that service was permissible under Article 87; instead, he noted that Article 87 "was most applicable to situations where the general service rules [for domestic service in China] govern" and "not to foreign-related/international cases such as that presented by the fact pattern here." *Id.* ¶ 20.

Professor Liebman and Mr. Sant also filed an amended letter on July 1, 2022 that included recently available information pertaining to the Court's question. Dkt. No. 99 ("July 1 Letter").

## II.   LEGAL STANDARD

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). In evaluating a motion for default judgment, the Court "accept[s] all of the [plaintiff's] factual allegations as true and draw[s] all reasonable inferences in its favor." *Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir. 2009). Nevertheless, the Court is required to determine whether Plaintiff's allegations establish liability as a matter of law, *see id.*, and it "has discretion under Rule 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action." *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981) (citation omitted).

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.,* 619 F.3d 207, 213 (2d Cir. 2010). And "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987); *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006) (same). "The plaintiffs bear the burden of proving that service was adequate." *Lopez v. Yossi's Heimishe Bakery Inc.*, 2015 WL

1469619, at *4 (E.D.N.Y. Mar. 30, 2015); *Chen v. Best Miyako Sushi Corp.*, No. 16CV2012JGKBCM, 2021 WL 707273, at *8 (S.D.N.Y. Feb. 1, 2021), *report and recommendation adopted sub nom. Shiqiu Chen v. Best Miyako Sushi Corp.*, No. 16-CV-2012 (JGK), 2021 WL 706412 (S.D.N.Y. Feb. 19, 2021) (same).

## III.   DISCUSSION

### a.   The Court Lacks Personal Jurisdiction over the Defaulting Defendants

The Court lacks personal jurisdiction over the defaulting defendants.  In this case, the defendants are located in the People's Republic of China.  Compl. ¶ 30.  Both China and the United States are parties to the Hague Convention which seeks to "simplify, standardize, and generally improve the process of serving documents abroad."  *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1505 (2017); *see also*, The World Organisation for Cross-border Co-operation in Civil and Commercial Matters, HCCH Members, https://www.hcch.net/en/states/ hcch-members (last visited July 20, 2022) (listing both the United States and China as parties to the Convention).

"[C]ompliance with the Convention is mandatory in all cases to which it applies." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988).  Here, because the defendants are located in China, a party to the Convention, the Hague Convention applies.  "As both the United States and China are signatories to the Hague Convention, that pact governs service of process by transmittal of documents abroad in this case."  *Kiss Nail Prod., Inc. v. Shenzhen Jinri Elec. Appliance Co.*, No. CV185625PKCAYS, 2020 WL 4679631, at *3 (E.D.N.Y. July 23, 2020), report and recommendation adopted, No. 18CV5625PKCAYS, 2020 WL 4676415 (E.D.N.Y. Aug. 12, 2020); *see also* Hague Convention art. 1 ("The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad."); Fed. R. Civ. P. 4 advisory committee's note ("Use of the Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service.").

### i.   Rule 4(f)

Rule 4(f) gives effect to the Hague Convention and its exceptions.  The rule has three

subsections, and provides the following:

> Unless federal law provides otherwise, an individual . . . may be served at a place not within any judicial district of the United States:
>
> > (1)  by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
> >
> > (2)  if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
> >
> > > (A)  as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
> > >
> > > (B)  as the foreign authority directs in response to a letter rogatory or letter of request; or
> > >
> > > (C)  unless prohibited by the foreign country's law, by:
> > >
> > > > (i)  delivering a copy of the summons and of the complaint to the individual personally; or
> > > >
> > > > (ii)  using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
> >
> > (3)  by other means not prohibited by international agreement, as the court orders.

Paragraph 1 "gives effect to the Hague Convention on the Service Abroad of Judicial and

Extrajudicial Documents."  4B Charles A. Wright, Arthur R. Miller & Adam N. Steinman, Federal

Practice and Procedure § 1133 (4th ed. April 2020 update).   Paragraph 2 "provides options to the

party serving process when internationally agreed process methods are not intended to be exclusive

or when no international agreement is applicable, as would be true, for example, when service is to

be made in a nation that is not a signatory to the Hague Convention."  *Id.*  And paragraph 3

"authorizes the district court to approve other methods of service not prohibited by international agreements." *Id.*

To serve Defendants pursuant to Rule 4(f)(1), then, Plaintiff would have been required to follow the procedures expressly laid out in the Hague Convention.  Plaintiff did not attempt service pursuant to the methods laid out in the Hague Convention; instead, it sought a Court's order permitting service pursuant to Rule 4(f)(3), and later asserted that Defendants were also properly served pursuant to Rule 4(f)(2).  As discussed herein, Plaintiff is incorrect on both counts.

### 1.   The Hague Convention Applies to All Defendants

As an initial matter, Plaintiff claims that the Hague Convention does not apply to eleven defendants whose addresses could not be readily found on their virtual storefronts.  *See* Mem. at 4–5.  "The Hague Convention does not apply 'where the address of the person to be served with the document is not known.'"  *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14-CV-1112 (VSB), 2018 WL 4757939, at *4 (S.D.N.Y. Sept. 30, 2018) (citing Hague Convention art. 1).  "Courts in this Circuit have found that an address is 'not known' if the plaintiff exercised reasonable diligence in attempting to discover a physical address for service of process and was unsuccessful in doing so."  *Id.* (collecting cases).

Cases in which plaintiffs have been found to have exercised reasonable diligence to discover a physical address include where the plaintiff "researched [defendant's] websites associated with [defendant's] [d]omain [n]ames, completed multiple Internet-based searched, called known phone numbers, and conducted in-person visits," *id.*, where the plaintiff performed "extensive investigation and [issued] subpoenas to the relevant domain registrars and email providers," *Microsoft Corp. v. Does 1-2*, No. 20CV1217LDHRER, 2021 WL 4755518, at *3 (E.D.N.Y. May 28, 2021), report and recommendation adopted, No. 20CV1217LDHRER, 2021 WL 4260665 (E.D.N.Y. Sept. 20, 2021), and where a plaintiff has "attempted to obtain [the defendant's] address in a variety of ways," *Prediction Co. v. Rajgarhia*, No. 09 Civ. 7459(SAS), 2010 WL 1050307, at *2

(S.D.N.Y. Mar. 22, 2010).

Here, Plaintiff has not demonstrated that it used reasonable diligence to determine the defendants' physical addresses.  Plaintiff alleges only that "upon review of Defendants' Merchant Storefronts . . . [Plaintiff's counsel] discovered that . . . eleven (11) of the Defaulting Defendants . . . displayed a partial, incomplete and/or false address."[4]  Mem. 4–5.  According to Plaintiff, the only investigation done into the defendants' physical address in the twelve months since this action was filed was a mere perusal of a defendant's storefront—Plaintiffs do not claim that they sought information from Amazon regarding the defendants' addresses, nor do they claim to have taken any additional steps to determine the defendants' addresses.  As the cases cited above demonstrate, more is required to establish "reasonable diligence" in searching for the defendants' physical addresses.  *See Luxottica Grp. S.p.A. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 391 F. Supp. 3d 816, 825 (N.D. Ill. 2019) (determining that the plaintiff had not conducted a reasonable search for defendant's addresses where the plaintiff summarily asserted that a website would be unlikely to provide its users addresses).

Accordingly, all of the defendants are subject to the Hague Convention, including those defendants whose physical addresses could not readily be ascertained from their merchant storefronts.

## 2.  Service Was Not Proper Under Rule 4(f)(3)

The defendants in this case were not properly served pursuant to Federal Rule of Procedure 4(f)(3).[5]  Rule 4(f)(3) allows litigants in the United States serve an individual or entity outside of the

---

[4] Those defendants are Acuteye-US, Dazzparty, Joysail, NA-AMZ001, nuoting, Sensiamz Backdrop, SMSCHHX, tongmumy, WEN MIKE, WOW GIFT and XueHua INC.  Plaintiff voluntarily dismissed XueHua Inc. from this case after filing its motion for default judgment.  Dkt. No. 83.

[5] In the Court's July 9, 2021 order granting Plaintiff's request for a temporary restraining order, the Court authorized service under Rule 4(f)(3).  Dkt. No. 14 § IV(A).  The Court should not have done so.  As discussed herein, service is not permissible under Rule 4(f)(3) in this case.  The Court's previous decision was decided in a vacuum—as discussed, Plaintiff's application for a TRO was not opposed, and Plaintiff wholly failed to bring to the Court's attention any

United States "by other means not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3). "The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court." *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y.2010) (internal quotation marks omitted).   "In exercising its discretion, the court should look at the case-specific record before it." *Baliga on behalf of Link Motion Inc. v. Link Motion Inc.*, No. 18CV11642 (VM) (DF), 2020 WL 5350271, at *9 (S.D.N.Y. Sept. 4, 2020); *In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 266 ("Inasmuch as Rule 4(f)(3) calls upon a court to exercise its discretion [ ], each case must be judged on its facts").[6]

Thus, service by a method that is prohibited by international agreement is impermissible under Rule 4(f)(3).   And here, service by email on defendants located in China is not permitted under the Hague Convention.

The Hague Convention permits service by multiple methods.   "First, an applicant can send a request for service to a receiving country's central authority, an entity that every signatory to the Convention must establish." *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 480 F. Supp. 3d 977, 980 (N.D. Cal. 2020); *see also* Hague Convention, arts. 2–7.   "The central authority must

---

precedent that had determined that service under the Hague Convention was not permitted.   It was not until the Court received YLILLY's briefing on its motion to dissolve the preliminary injunction that the Court was clued into the issue of the propriety of service by email on defendants located in China.   Now, with the aid of YLILLY's briefing, oral argument, and the input of experts in Chinese law, the Court has more fulsomely considered the issue and realizes that its previous order was in error.

[6] The Court briefly notes that courts in this district disagree regarding whether a Plaintiff must attempt service pursuant to Rule 4(f)(1) or 4(f)(2) prior to attempting service pursuant to Rule 4(f)(3).   For instance, in *Shanghai Zhenglang Tech. Co. v. Mengku Tech. Co.*, the Court reasoned

> [P]laintiff initiated this action on October 30, 2020 and moved this Court to authorize alternative service by email eleven days later on November 10, 2020.   Based on Plaintiff's submissions, and the short time between the filing of this complaint and the present motion, the Court is unable to conclude that Plaintiff has made the threshold showing required by courts in this Circuit.   Specifically, Plaintiff has failed to demonstrate that it 'reasonably attempted to effectuate service on the defendant,' such as through the Hague Service Convention to which China is a signatory Plaintiff.

No. 20-CV-5209(JS)(ARL), 2020 WL 13280555, at *2 (E.D.N.Y. Nov. 18, 2020).   By contrast, in *Halvorssen v. Simpson*, 328 F.R.D. 30, 34 (E.D.N.Y. 2018), the court determined that "there is no legal requirement that service be attempted under the Hague Convention prior to seeking an order of alternative service under Rule 4(f)(3)."

attempt to serve the defendant by a method that is compatible with the receiving country's domestic laws, and then provide the applicant with a certificate either confirming that service was successful or listing the reasons that prevented service." *See Facebook*, 480 F. Supp. 3d at 980; Hague Convention, arts. 2–7.

"Second, the Convention permits alternative methods of service unless the receiving country objects." *See Facebook*, 480 F. Supp. 3d at 980; Hague Convention, arts. 8–10. "These methods include service by diplomatic and consular agents, service through consular channels, service on judicial officers in the receiving country, and direct service 'by postal channels.'" *See Facebook*, 480 F. Supp. 3d at 980; Hague Convention, arts. 8–10. China has specifically objected to service "by postal channels." *See China – Central Authority & Practical Information, Hague Conference on Private Int'l Law*, https://www.hcch.net/en/states/en/states /authorities/details3/?aid=243 (last visited July 20, 2022). Thus, there is no dispute that litigants located in China may not be served via postal mail. "Email," however, is not mentioned anywhere in the Convention, which long predates the advent of email. The question is whether or not the lacuna of the Hague Convention means that service by email is permitted or prohibited by the Convention.

### 3.    Service by Email on Litigants in China is Prohibited by the Hague Convention

Here, the Court concludes that service via email on litigants located in China is not permitted by the Hague Convention. *See, e.g., Facebook*, 480 F. Supp. 3d at 978 (concluding that service by email was not proper); *Prem Sales, LLC v. Guangdong Chigo Heating & Ventilation Equip. Co.*, 494 F. Supp. 3d 404, 417 (N.D. Tex. 2020) (same); *Luxottica*, 391 F. Supp. 3d at 825 (same). As numerous courts have recognized, binding Supreme Court precedent indicates that the Hague Convention outlines specific methods of service, and that methods of service that are not specifically authorized are impermissible under the Convention. *See, e.g., Anova Applied Elecs., Inc. v.*

*Hong King Grp., Ltd.*, 334 F.R.D. 465, 472 (D. Mass. 2020) ("To permit service by e-mail would bypass the means of service set forth in the Convention."); *CRS Recovery, Inc. v. Laxton*, No. C 06-7093 CW, 2008 WL 11383537, at *2 (N.D. Cal. Jan. 8, 2008) ("An order allowing email service on a defendant located in China would contravene the treaty, and is not permitted under Rule 4(f)(3).").

In *Water Splash*, the Supreme Court considered whether Article 10(a) of the Convention, which provides that the Convention "shall not interfere with . . . the freedom to *send* judicial documents, by postal channel, directly to persons abroad," permitted *service* of judicial documents via postal mail. 137 S. Ct. at 1508. Prior to *Water Splash*, circuits were split as to whether Article 10(a) permitted service of judicial documents by postal mail, disagreeing over whether Article 10(a)'s text reference to "sending" documents—rather than "serving" documents—was intended to indicate that service by postal mail was permissible. *Id.* After analyzing Convention's text and structure, the Supreme Court concluded that the Convention permits service of judicial documents by mail unless a country lodges an objection to Article 10(a). *Id.* at 1513.

In reaching that conclusion, the Supreme Court reiterated that "the Hague Service Convention specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies." *Id.* (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 699 (1988)). In other words, *Water Splash* indicated that the only permissible methods of service were those "specified" in the Convention.

*Water Splash* relied on the Supreme Court's previous decision in *Schlunk*.[7] In *Schlunk*, the Supreme Court held that the "Convention is mandatory in all cases to which it applies." 486 U.S. at 705. Thus, where a country is a signatory to the Hague Convention, and where service of a party in

---

[7] That case concerned whether compliance with the Hague Convention was required when serving a domestic subsidiary of a foreign corporation. *See generally id.* The Court held that where a country's laws would ordinarily require documents to be transmitted to a foreign country, then the party serving judicial documents must ensure that those documents are served by a method prescribed in the Hague Convention. *Id.* The appellant had argued that relying on the serving parties' country's laws to determine when documents needed to be transmitted overseas would permit countries to create laws that omitted any requirement that documents be transmitted overseas, allowing those countries to avoid service pursuant to the Hague Convention. *Id.* at 702–703.

that country would require the transmission of documents abroad, a party must follow the dictates of the Convention.  And as the Supreme Court acknowledged, "the first stated purpose of the Convention is 'to create' appropriate means for service abroad," adding that "[t]he Convention provides simple and certain means by which to serve process on a foreign national."  *Id.* at 705–06.

*Water Splash* and *Schlunk* do not expressly state whether service via email—especially for a country that has objected to Article 10(a)—is a permitted under the Convention.  But their logic is clear:  the Convention is meant to outline—to "create"—specific methods of service in order to provide "simple and certain means" that may be used to serve individual in a foreign country.

As stated, email is nowhere mentioned in the Convention.  Email's absence in the Convention leaves the Court with two questions:  (1) whether email is a permissible method of service under the Convention in general; and (2) if so, whether email is a permissible method of service where a country has objected to service by "postal channels."

The Court need not answer the first question because, even assuming it to be true, China has objected to service by postal channels.  Nevertheless, the Court acknowledges that some courts have determined that service via email, regardless of a country's objections, is precluded under the Hague Convention.  *See Anova*, 334 F.R.D. at 471–72 (concluding that "e-mail service on defendants is prohibited by the Hague Convention."); *Topstone Commc'ns, Inc. v. Xu*, No. 4:22-CV-00048, 2022 WL 1569722, at *4 (S.D. Tex. May 18, 2022) ('[E]mail service is not permitted under the Convention because it is inconsistent with and not authorized by the Convention's delineated service methods."); *Prem Sales, LLC,* 494 F. Supp. 3d at 417 (same).

Again, the Court need not determine whether it agrees with that position here, given China's objection to Article 10(a).  But the Court notes that Articles 11 and 19 of the Convention provide some support to the wholesale preclusion of email as a method of service.  "Article 11 provides that any two states can agree to methods of service not otherwise specified in the Convention," and "Article 19 clarifies that the Convention does not preempt any internal laws of

its signatories that permit service from abroad via methods not otherwise allowed by the Convention." *Water Splash*, 137 S.Ct. at 1508.  "What both these articles have in common is that they leave countries free to consent, either unilaterally or together, to means of service that are not specifically authorized by the Convention." *Anova*, 334 F.R.D. at 471.  In other words, Articles 11 and 19 provide ready tools to permit countries to expressly permit service by email.  And those articles would be largely superfluous if litigants could serve a party in another country merely by selecting a method that is not expressly listed in the Hague Convention—there would be no need for articles that permit countries to agree to other methods of service, or to legislate to affirmatively authorize other methods of services.

Without deciding that question, the Court turns to whether service by email is permitted for countries that have objected to service via postal channels.  Some courts have concluded that service "by postal channels" encompasses service by email, such that service by email is permissible under the Convention.  *See e.g.*, *Agha v. Jacobs*, No. C 07-1800 RS, 2008 WL 2051061, at *2 (N.D. Cal. May 13, 2008) ("Agha's attempt to distinguish email and facsimile from the 'postal channels' referred to in the text of Article 10 is unavailing.").  If that is the case, however, it must be true that China's objection to service via "postal channels" would necessarily encompass an objection to service via email.  *See also Facebook*, 480 F. Supp. 3d at 984 ("[A]lthough it has been suggested that service by e-mail could conceivably come within an expansive reading of service 'by postal channels,' China has affirmatively objected to service 'by postal channels,' so that reading, even if accepted, wouldn't support service by e-mail on defendants in China.") (citation omitted).

Recent guidance posted by Supreme People's Court of China leaves little doubt that China's objection to service by mail would encapsulate service by email.  Article 11 of the Minutes of the

National Symposium on Foreign-related Commercial and Maritime Trial Work provides guidance for Chinese courts serving litigants outside of China.[8]  Those minutes state:

> In the event that the country where the person to be served is located is a member state of the Hague Service Convention and objects to the service by mail under the Convention, it shall be presumed that the country does not allow electronic service, and the people's court shall not adopt electronic service.

July 1 Letter.  That Chinese authorities opine that an objection to service by postal channels includes an implicit objection to service by email provides significant support for the view that China's objection to service by postal channels would preclude service by email under the Hague Convention.

Nevertheless, some courts, including courts in the Second Circuit, have come to the opposite conclusion, determining that service via email on Chinese defendants is permitted by the Hague Convention.  *See, e.g., Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 332 (S.D.N.Y. 2015); *Kaneka Corp. v. Purestart Chem Enter. Co.,* No. 16CV4861MKBSIL, 2017 WL 11509784, at *3 (E.D.N.Y. Oct. 17, 2017); *WeWork Cos. Inc. v. WePlus (Shanghai) Tech. Co.*, No. 5:18-CV-04543-EJD, 2019 WL 8810350, at *2–3 (N.D. Cal. Jan. 10, 2019).[9]  Those courts typically reason that an objection to service by postal channels does not expressly bar service via email, such that service by

---

[8] As amici explain, these meeting minutes are not formal law in China.  Nonetheless, "the Supreme People's Court uses meeting minutes such as these to distribute its views to lower courts to guide court actions, and lower courts are expected to follow the guidance set forth in meeting minutes."  *See* July 1 Letter.

[9] *See also ShelterZoom Corp. v. Goroshevsky*, No. 19-CV-10162, 2020 WL 4252722, at *2 (S.D.N.Y. July 23, 2020)(affirming service via email for a defendant residing in Russia as Russia's objection to Article 10 did not explicitly extend to an objection to electronic service); *Mattel, Inc. v. Animefun Store, et al.,*, No. 18–CV–8824, 2020 WL 2097624, at *5 (S.D.N.Y. May 1, 2022)("China's objection to service by postal channels under Article 10 of the Hague Convention does not encompass service by email and ... service by email is not prohibited by any international agreement."); *AMTO v. Bedford Asset Mgmt.* No. 14–CV–9913. *LLC*, 2015 WL 3457452, at *7 (S.D.N.Y. Jun 1, 2015)(authorizing service via email under Rule 4(f)(3) to a defendant residing in Russia where Russia did not explicitly object to electronic service and neither international agreement nor Russian law prohibited service via email); *F.T.C. v. Pecon Software Ltd.*, No. 12 –CIV–7186 2013 WL 4016272, at *5 (S.D.N.Y. Aug. 17, 2013)("Numerous courts have held that service by email does not violate any international agreement where the objections of the recipient nation are limited to those means enumerated in Article 10."); *Gurung*, 279 F.R.D. at 220 ("[India's] objection to service through postal channels does not amount to an express rejection of service via electronic mail ..., [s]everal other courts have found service by electronic mail appropriate where a signatory nation has not objected to that specific means of service").

email is permitted.  *See, e.g., In re S. African Apartheid Litig.*, 643 F.Supp.2d 423, 434 (S.D.N.Y. 2009) (permitting service on counsel in Germany and noting that "[a]lthough Germany has objected to specific forms of service otherwise enumerated in the Hague Convention, it has not expressly barred alternative forms of effective service not referenced in the Hague Convention."); *NBA Properties, Inc. v. Partnerships & Unincorporated Associations Identified in Schedule "A"*, 549 F. Supp. 3d 790, 798 (N.D. Ill. 2021), *appeal dismissed sub nom. NBA Properties, Inc. v. HANWJH*, No. 21-2378, 2021 WL 6689526 (7th Cir. Nov. 9, 2021) (determining that service via email was proper because the court did not "interpret the term 'postal channels' to include electronic mail"); *Chanel, Inc. v. Individuals, Partnerships and Unincorporated Associations Identified on Schedule "A"*, 2020 WL 8226841, *2 (S.D. Fla. 2020) ("Where a signatory nation has objected to the alternative means of service provided by the Hague Convention, that objection is expressly limited to those means and does not represent an objection to other forms of service, such as e-mail or website posting.").

To those courts, where a country specifically objects to service by "postal channels," a method of service by means other than postal channels is permissible absent some other prohibition.  *Sulzer*—arguably the leading case in this district on this issue—adopts that rationale. *Sulzer*, 312 F.R.D. at 332; *see also e.g., Kaneka*, 2017 WL 11509784 at *3 (relying on *Sulzer*); *La Dolce Vita Fine Dining Co. Ltd. v. Zhang Lan*, No. 1:19-MC-00536-ALC, 2020 WL 7321366, at *6 (S.D.N.Y. Dec. 11, 2020) (same); *Grp. One Ltd. v. GTE GmbH*, No. 20-CV-2205 (MKB), 2021 WL 1727611 (E.D.N.Y. Feb. 3, 2021) (same).

The Court disagrees with *Sulzer* and its progeny.  Notably, *Sulzer* was decided before *Water Splash* was issued.  And, as is the case here, the motion for alternative service in *Sulzer* was wholly unopposed, such that the court did not have the benefit of briefing that took an alternative position to that advanced by the plaintiff in that case.  *See Mixpac AG v. Medenstar Indus. Co.,* Case No. 1:15-cv-1668, Dkt. Nos. 5–9 (S.D.N.Y.).  In this Court's view, like that of courts in the Northern District of California, the District of Massachusetts, and the Northern District of Illinois (among

others), *Water Splash* and *Schlunk* clarify that the Convention is meant to set forth simple and certain methods of service that can be used to serve foreign litigants. To infer that the Convention's silence as to a particular method equates to an implied permission to use virtually *any* method of service not proscribed by the Convention contravenes that purpose.

Moreover, the effect of a country's objections under Article 10 would be significantly diminished under *Sulzer's* rationale. If the Convention lays out specific means of service, countries can make specific objections to those means of service—just as a country can object to service by postal channels by objecting to Article 10(a). But if the Convention's silence as to a method of service implicitly authorizes that service, there would be no ready way to object to that method of service. Indeed, there would be nothing affirmative to object to. Simply put, the current force of an objection to a method of service in the Convention would be far less effective. As the court in *Premier Sales* aptly reasoned:

> Countries, including China, objected to Article 10 of the Convention because, by its clear language, the service methods identified were specifically permitted unless objected to. The same cannot be said of email service. There is no reason for a nation to affirmatively object to a service method that is not authorized or identified because the Convention "specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies.

494 F. Supp. 3d 404, 416 (N.D. Tex. 2020) (quoting *Water Splash, Inc.*, 137 S. Ct. at 1507).

Plaintiff also argues that service under Rule 4(f)(3) should be permitted given the "exigent" circumstances Plaintiff faced. However, the Court need not determine whether the request was truly urgent because it does not matter. There is no exigent circumstances exception in Rule 4(f)(3): Rule 4(f)(3), by its plain terms, does not permit service by a method prohibited by international agreement. And as discussed, service by email on litigants in China is prohibited by the Hague Convention. Indeed, in support of their argument to the contrary, Plaintiff relies only on cases in which the court first determined that service was permissible under Rule 4(f)(3) before turning to its discussion of urgency. *See Hangzhou Chic Intelligent Tech. Co. v. P'ships & Unincorporated*

*Ass'n Identified on Schedule A*, No. 20 C 4806, 2021 WL 1222783, at *5 (N.D. Ill. Apr. 1, 2021)

(determining that "Hague Convention service is optional under Federal Rule of Civil Procedure 4");

*Microsoft Corp. v. Goldah.com Network Tech. Co.*, No. 17-CV-02896-LHK, 2017 WL 4536417, at *4

(N.D. Cal. Oct. 11, 2017) ("Microsoft was entitled to, and did, effect service according to the terms

of Rule 4(f)(3)."). This makes sense because the rules do not permit litigants to craft their own

method of service whenever they think the issue is urgent.

Simply put, the Hague Convention prohibits service by email on defendants located in

China. Rule 4(f)(3) only permits service by "means not prohibited by international agreement."

Fed. R. Civ. P. 4(f)(3). Accordingly, defendants were not properly served pursuant to Rule 4(f)(3),

and Plaintiff has not established that the Court has personal jurisdiction over Defendants on that

basis.

### 4.   Service Was Not Proper Under Rule 4(f)(2)(C)

Neither was service proper pursuant to Rule 4(f)(2)(c). Rule 4(f)(2)(c) provides that an

individual may be served in a foreign country "if there is no internationally agreed means, or if an

international agreement allows but does not specify other means, by a method that is reasonably

calculated to give notice . . . unless prohibited by the foreign country's law." Fed. R. Civ. P. 4(f)(2).

Here, there is an internationally agreed upon means—the Hague Convention spells out

specific methods that could have been used to serve Defendants. And as discussed, the Hague

Convention does not allow service by email on litigants in China. But even if it did, Defendants in

this case were not be properly served under Rule 4(f)(2)(c) because Chinese law prohibits a foreign

party from serving defendants located in China by email.

Article 284 (formerly Article 277) of the People's Republic of China Civil Procedure Law

("Article 284") directly addresses requests for judicial assistance, including service of process, in

China. Article 284 states:

A request for and the provision of judicial assistance shall be conducted through

channels stipulated in the international treaties concluded or acceded to by the People's Republic of China, and in the absence of treaty relations, shall be conducted through diplomatic channels.

An embassy or consulate of a foreign country in the People's Republic of China may serve documents on, investigate, or collect evidence from the citizens of that country, provided, however, that the laws of the People's Republic of China are not violated and that no compulsory measures are adopted.

*Except for the circumstances specified in the preceding paragraph, no foreign agency or individual may serve documents, conduct investigations.*

Article 284 (formerly Article 277) of the People's Republic of China Civil Procedure Law (emphasis added); *see also* Amicus Brief at 3–4.

Article 284 expressly provides that, subject to exceptions not applicable here, "no foreign agency or individual may serve documents or collect evidence within the territory of the People's Republic of China without the consent of the in-charge authorities." That provision is unambiguous: foreign individuals cannot serve documents unless Chinese authorities consent to their doing so. Moreover, and as previously discussed, China has objected to Article 10(a) of the Hague Convention, thus disallowing service by postal channels. Thus, a foreign individual or entity cannot, as a general rule, directly serve an individual in China by any means—not just email.

Rather, the first paragraph of Article 284 clarifies that service of process can only be made "through channels stipulated in international treaties"—in other words, through the Hague Convention's Central Authority. China has designated its Ministry of Justice as its central authority. *See* Amicus Brief at 4 (citing The World Organisation for Cross-border Co-operation in Civil and Commercial Matters, China – Central Authority & Practical Information, FAQs, https://assets.hcch.net/docs/5bbc302d-532b-40b1-9379-a2ccbd7479d6.pdf (last visited July 20, 2022) ("FAQs")). Thus, the "channel" through which service by a foreign litigant must be made is through the procedures set forth in the Hague Convention—and not by email.

Moreover, as amici explain, "in China, the courts themselves serve documents on litigants." Amicus Brief at 2. Parties do not directly serve judicial documents in China, as Plaintiff attempted

to do here.  To serve a party in China, an individual in a foreign country must apply to the Ministry of Justice.  *See* FAQs.  If the Ministry of Justice approves that request, the Ministry of Justice will forward the material to the Supreme People's Court of China, which will review the request and distribute it to a local court.  *Id.*  The local court then arranges the service and sends proof of service back to the Ministry of Justice, which forwards that proof along to the serving party.  *Id.*  Indeed, if there were any doubt that an email sent by a foreign litigant is an impermissible means of service for litigants located in China, foreign litigants are precluded from emailing even *an initial request for service* to the Ministry of Justice.  *See* FAQs ("According to the Chinese Civil Procedure Law, the court officer must serve the original hardcopies of the judicial documents on the recipient. Therefore, scanned copies transferred by email or only duplicated copy without the original signature is not acceptable.").

Plaintiff's expert, Mr. Wagner, claims that Article 274, and not Article 284, provides the relevant law to determine whether email service is permitted.  But Article 274 outlines the methods for "[s]ervice of litigation documents by People's Courts on litigants without a domicile in the People's Republic of China."  *Wagner Decl.* ¶ 24.  Thus, Article 274 still requires service "*by People's Courts.*"  Article 274 does not permit one individual or entity to directly serve another entity, as Plaintiff attempted to do here.  The reference to the "People's Court" in Article 274 is to courts of China, not Judge Milian's "People's Court,"[10] or this Court.  This Court is obviously not authorized to serve individuals under Article 284.  Plaintiff's expert's arguments based on Article 274 are simply not on point because Plaintiff did not and is not seeking to serve the defendants under the auspices of a People's Court.

More broadly, Article 274's text—which again, provides for service of litigation documents by People's Courts on litigants without a domicile in the People's Republic of China—plainly

---

[10] In the United States, the "People's Court" is a popular daytime television show in which TV-personality Judge Marilyn Milian presides over small claims in a simulated (and often dramatic) courtroom.

applies when a court in the People Republic of China seeks to serve individuals who are not located in China.  That is not the case here, where a plaintiff located in a foreign country sought to serve a litigant in China.  Article 284, by contrast, expressly addresses the process by which a "foreign agency or individual may serve documents [or] conduct investigations" in the People's Republic of China.  It is clear that Article 284 more readily applies in cases like this one: cases where foreign litigants seek to serve individuals in the People's Republic of China.  *Cf. Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.*, No. 17-CV-02191-SK, 2019 WL 6134958, at *2 (N.D. Cal. Nov. 19, 2019) (accepting defendant's expert's representation that "Article 277 [now Article 284] prohibits foreign entities or individuals from serving documents, investigating and/or conducting discovery in the PRC").

As mentioned, Plaintiff also argues that Article 90 (formerly Article 87) can be construed to permit foreign litigants to serve individuals and entities in China by email.  Article 90 states, "[u]pon consent of the party on whom litigation documents are to be served, the People's Court may adopt an electronic method of service of litigation documents the receipt of which can be acknowledged."  Amicus Brief at 5.  First, as discussed, Plaintiff's own expert disagrees that Article 90 applies in this case.  *See supra* § I(b).  And second, by its plain text, Article 90 still requires that a "People's Court" serve litigation documents—not the parties.[11]

In sum, Rule 4(f)(2)(C) only permits service via methods that are not "prohibited by the foreign country's law."  Here, the law of the People's Republic of China prohibits foreign entities and individuals from serving litigants in China without the consent of the Ministry of Justice.  And

---

[11] Plaintiff, Mr. Wagner, and amici devote significant discussion to the means by which an individual can consent to electronic service under both Article 274 and Article 90.  *See* Amicus Br. At 5–13, Wagner Decl.  ¶¶ 25–27, Mem. at 7–8.  Plaintiff argues that Defendants agreed to electronic service by accepting Amazon's terms and conditions, which required Defendants to agree to receive communications by email.  *See* Mem. at 8.  Mr. Wagner and amici seem to agree that the Supreme People's Court has not yet addressed whether a party's consent to a standard form contract with an online retailer should be construed as consent to service by a third-party.  But here, the Court need not determine what constitutes consent in these circumstances because there is *no dispute* that a People's Court, and not a litigant, must serve a party in China.

there is no dispute that Plaintiff did not apply to the Ministry of Justice to serve the defendants in this case. Accordingly, Plaintiff failed to serve the defendants via Rule 4(f)(2)(C).

Accordingly, Defendants were not properly served in this case, and the Court lacks personal jurisdiction to enter default judgment in Plaintiff's favor.

### 5. Article 15 of the Hague Convention Prohibits the Entry of Default Judgment

Even if the Court had determined that service by email was permissible under the Hague Convention, it would still not be permitted to enter default judgment. "Article 15 [of the Hague Convention] sets forth certain conditions that must be met prior to the entry of judgment when a defendant has not appeared—i.e., prior to default judgment." *Prince v. Gov't of People's Republic of China*, No. 13-CV-2106 (TPG), 2017 WL 4861988, at *6 (S.D.N.Y. Oct. 25, 2017). Article 15 provides the following:

> Where a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and the defendant has not appeared, judgment shall not be given until it is established that
>
> a) the document was served by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory, or
>
> b) the document was actually delivered to the defendant or to his residence by another method provided for by this Convention, and that in either of these cases the service or the delivery was effected in sufficient time to enable the defendant to defend.
>
> Each Contracting State shall be free to declare that the judge, notwithstanding the provisions of the first paragraph of this Article, may give judgment even if no certificate of service or delivery has been received, if all the following conditions are fulfilled
>
> a) the document was transmitted by one of the methods provided for in this Convention,
>
> b) a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,
>
> c) no certificate of any kind has been received, even though every

reasonable effort has been made to obtain it through the competent authorities of the State addressed.

Notwithstanding the provisions of the preceding paragraphs the judge may order, in case of urgency, any provisional or protective measures.

Hague Convention, art. 15 ("Article 15").

In this case, as is typical in cases of this type, there is no dispute that Plaintiff's never received a "certificate" of any kind, such that the second paragraph of Article 15 applies. That paragraph permits a judge to enter default judgment in a plaintiff's favor only if at least the following requirements are met: (1) the plaintiff transmitted the relevant documents "by one of the methods provided for in the Convention;" and (2) "every reasonable effort has been made to obtain such a certificate through the competent authorities of the state addressed." [12] *See also Zhang v. Baidu.com Inc.*, 932 F. Supp. 2d 561, 565 (S.D.N.Y. 2013) (Article 15 states that "a judge may give judgment, 'even if no certificate of service or delivery has been received,' if the document was transmitted pursuant to the Convention, a period of time not less than six months has elapsed, and 'no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities.'").

Thus, Article 15 requires judicial documents be "transmitted" according to the procedures laid out in the Convention in order for the Court to enter judgment in a plaintiff's favor—even if the plaintiff ultimately does not receive a certificate of service. As discussed, in this case that would have required Plaintiff to send the relevant judicial documents to the Ministry of Justice. There is no dispute that Plaintiff did not do so. And Plaintiff falls far short of establishing that it made *any* reasonable efforts to obtain a certificate of service through authorities in China—it sought

---

[12] A plaintiff must also ensure that "the document was served by a method prescribed by the internal law of the state addressed for the service of documents in domestic actions." As amici and Mr. Wagner explain, and as previously mentioned, it is unclear whether parties may consent to electronic service by agreeing to a third-party's terms and conditions, as Plaintiff argues occurred here. However, because the other requirements in Article 15 are not satisfied, the Court need not take up the question of whether Plaintiff demonstrated that documents were served by a method prescribed by the internal law of China addressed for the service of documents in domestic actions upon persons who are within its territory.

permission to serve Defendants directly, via email, only two days after filing its Complaint. Accordingly, the Court lacks the authority to enter default judgment in Plaintiff's favor, and declines to do so.  *See Zhang*, 932 F. Supp 2d at 568 (denying a motion for default judgment where defendant was not properly served under the Hague Convention).

Plaintiff asserts that it has satisfied Article 15 because this is a case of "urgency" such that the Court may use any provisional or protective measures, Mem. at 14–15, but that argument has no merit.  Plaintiff's position is that Plaintiff's "request for the TRO and PI order was urgent for the reasons demonstrated in Plaintiff's application."  Mem. at 14.  But even if service by email in China were permitted in "urgent" circumstances—which, as discussed, it is not—Article 15 still would not permit the entry of default judgment unless the plaintiff attempted to transmit the relevant judicial documents pursuant to the methods outlined in the Hague Convention.  "Article 15 says that a judgment may not be entered unless a foreign defendant received adequate and timely notice of the lawsuit."  *Schlunk*, 486 U.S. at 703.  To better ensure that a defendant is given notice of a lawsuit, Article 15 imposes requirements on plaintiffs that are separate from, and in addition to, service upon the defendant:  as discussed, Article 15 requires that judicial documents are "transmitted by one of the methods provided for in this Convention."  Article 15.  Thus, even if a party were initially served by email—a method that is not "provided for in th[e] Convention"—the plain text of Article 15 plainly would require a plaintiff to also "transmit" the documents by a "method provided for in th[e] Convention" before a court could enter a default judgment.  In this way, Article 15 serves as a metaphorical backstop to ensure that foreign defendants receive notice of a lawsuit prior to the entry of judgment:  if a plaintiff fails to transmit documents via a method in the Hague Convention, it cannot collect a judgment.  *See Schlunk*, 486 U.S. at 705 ("Article[] 15 . . . provide[s] an indirect sanction against those who ignore [the Convention]").

Accordingly, Plaintiff has not established that it is entitled to entry of default judgment in under Article 15 of the Hague Convention.

6.    **CONCLUSION**

It does not escape the Court that many requests by plaintiffs to serve a defendant in China by email are unopposed, as was the case here and in *Sulzer*.  Indeed, Plaintiff's counsel's firm has filed approximately forty such requests in this district in 2022 alone, the majority of which appear to be wholly unopposed.  *See, e.g., Kelly Toys Holdings, Llc V. Children 777 Store et al.*, Case No. 1:22-cv-1857, Dkt No. 17 at 17–19 (requesting to serve defendants in China by email); *The Pinkfong Company Inc. v. 7 Day Store et al.*, Case No. 1:22-cv-4133, Dkt. No. 17 at 17–19 (same, using identical language); *Mattel Inc. v. Agogo Store et al.*, Case No. 1:22-cv-2388, Dkt. No. 11 at 17–19 (same, again using identical language).  Thus, courts are unlikely to be alerted to authority that casts doubt on the propriety of their request for email service.  In this case, it was not until YLILLY's reply brief shed light on the issue that the Court had any notice that email service might not be permissible on defendants located in China.[13]

The Court acknowledges that the inability to serve defendants in China by email could present obstacles to bringing copyright and trademark enforcement actions against defendants who operate online storefronts from that country.  The Court understands that service via the procedures outlined in the Hague Convention can be lengthy, and that there is little ability to monitor the progress of a request for service to the Ministry of Justice.  *See In re Bibox Grp. Holdings Ltd. Sec. Litig.*, No. 20CV2807(DLC), 2020 WL 4586819, at *3 (S.D.N.Y. Aug. 10, 2020)

---

[13] The Court appreciates that *Sulzer* has been the leading case in this district on the issue of service of process by email on entities in China and that counsel for Plaintiff may have taken the position that it was consistent with their duty of candor to the Court not to present the substantial contrary authority from outside of this district with respect to that issue.  (It is less clear how counsel could rationalize a decision not to disclose the text of Article 15 of the Convention and the Supreme Court's commentary in *Schlunk* explaining its meaning in seeking default judgment in cases such as this.)  Full disclosure of adverse authority is helpful to the court—particularly in cases, where, as here, a motion is unopposed.  As the commentary to New York Rule of Professional Responsibility 3.3 states, "[a] tribunal that is fully informed on the applicable law is better able to make a fair and accurate determination of the matter before it." N.Y.R.P.R. 3.3 comment [4]; *see also* Commentary to ABA Model Rule 3.3[4] ("an advocate has a duty to disclose directly adverse authority in the controlling jurisdiction that has not been disclosed by the opposing party.  The underlying concept is that legal argument is a discussion seeking to determine the legal premises properly applicable to the case.").

(commenting that service through the procedures in the Hague Convention "poses the risk of significant delay" and that plaintiffs would be unable to check the status of their request). Moreover, the Court agrees that the goal of prosecuting copyright and trademark infringement abroad is a noble one.

However, the Court may not ignore the text of Rule 4(f), the Hague Convention, and Chinese law in order to make service more efficient for Plaintiff.  Nor may the Court ignore the implications of the Supreme Court's decisions in *Water Splash* and *Schlunk*.  Rather, the Court is bound to those precedential and textual strictures.  Indeed, "[t]hose rules are mandatory, and . . . 'the systemic comity interests embodied in the Service Convention' shouldn't be sacrificed in the name of 'concrete case management concerns.'"  *See Facebook*, 480 F. Supp. 3d at 987 (quoting Maggie Gardner, Parochial Procedure, 69 Stan. L. Rev. 941, 1000 (2017) (footnote omitted)).

For the reasons stated, Plaintiff's motion for default judgment is denied.

SO ORDERED.

Dated:  July 21, 2022
New York, New York

_____
GREGORY H. WOODS
United States District Judge