Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone:   (212) 292-5390
Facsimile:    (212) 292-5391
*Attorneys for Plaintiff*
*Smart Study Co., Ltd.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SMART STUDY CO., LTD., <br><br>*Plaintiff* <br><br> v. <br><br> ACUTEYE-US, APZNOE-US, BEIJINGKANGXINTANGSHANGMAOYOUXIAN GONGSI, BLUE VIVI, BONUSWEN, CHANGGESHANGMAOYOUXIANGONGSI, CITIHOMY, CKYPEE, DAFA INTERNATIONAL, DAZZPARTY, FAMING, GAIFEI TRADE CO LTD, GEGEONLY, HAITING$, HAOCHENG-TRADE, HAPPY PARTY-001, HEARTLAND GO, HUIBI-US, JOYSAIL, JYOKER-US1, KANGXINSHENG1, LADYBEETLE, LICHE CUPCAKE STAND, LVYUN, MARY GOOD SHOP, NA-AMZ001, NAGIWART, NUOTING, QINGSHU, QT-US, SALIMHIB-US, SAM CLAYTONDDG, SENSIAMZ BACKDROP, SHENZHENSHIXINDAJIXIEYOUXIANGONGSI, SMASSY US, SMSCHHX, SUJIUMAISUSU, SUNNYLIFYAU, TELIKE, THEGUARD, TONGMUMY, TOPIVOT, TUOYI TOYS, UNE PETITE MOUETTE, VETERANS CLUB a/k/a 老兵俱乐部, WCH- US, WEN MIKE, WONDERFUL | **CIVIL ACTION No. 21-cv-5860 (GHW)** <br><br> **AFFIDAVIT OF GABRIELA N. NASTASI IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND A PERMANENT INJUNCTION AGAINST DEFAULTING DEFENDANTS** |

MEMORIES, WOW GIFT, XUANNINGSHANGWU, XUEHUA INC, XUIYUI7I, YAMMO202, YICHENY US, YLILILY, YONGCHUNCHENGQINGMAOYIYOUXIANGONGSI, YOOFLY and ZINGON US,

*Defendants*

## **AFFIDAVIT OF GABRIELA N. NASTASI**[1]

I, Gabriela N. Nastasi, hereby affirm as follows:

1. I am an associate attorney at Epstein Drangel, located at 60 East 42nd Street, Suite 1250, New York, New York 10165.

2. I am over eighteen (18) years of age. I have never been convicted of a felony or any criminal offense involving moral turpitude, and I am fully competent to testify to the matters stated herein.

3. I have personal knowledge of every statement made in this Affidavit and such statements are true and correct.

4. I represent Smart Study Co., Ltd. in the above-referenced action against the above-captioned Defendants. As such, I am familiar with the facts and circumstances in this matter.

5. I make and submit this Affidavit in connection with Plaintiff's Motion for Default Judgment against Defaulting Defendants.

6. Upon information and belief, Defaulting Defendants are not infants, in the military or incompetent persons.

7. For the following reasons, I respectfully request that there is no just reason for delay in entering final judgment on Plaintiff's request for default judgment and entry of a permanent injunction.

8. Plaintiff respectfully submits that the entry of default judgment against Defaulting Defendants is appropriate and seeks the following relief against Defaulting Defendants: 1) the entry of final judgment and permanent injunction by default in order to prevent Defaulting Defendants from infringing Plaintiff's intellectual property rights in the future; 2) an award of Fifty

---

[1] Where a defined term is referenced herein but not defined, it should be understood as it is defined in the Glossary in Plaintiff's Memorandum of Law.

Thousand U.S. Dollars ($50,000.00) in statutory damages against each Defaulting Defendant (fifty-one (51) Defaulting Defendants) pursuant to 15 U.S.C. § 1117(C), plus post-judgment interest calculated pursuant to the statutory rate; and 3) service of asset restraining notices pursuant to CPLR § 5222.[2]

## I. PROCEDURAL HISTORY

9. On July 8, 2021, Plaintiff filed this action against Defendants, including Defaulting Defendants, for trademark infringement and counterfeiting of Plaintiff's federally registered trademarks, trademark infringement of Plaintiff's unregistered trademarks, false designation of origin, passing off and unfair competition, copyright infringement of Plaintiff's federally registered copyrights, and related state and common law claims. (Dkt. 4). Plaintiff moved *ex parte* against Defendants for an order to seal file, a temporary restraining order, an order restraining Merchant Storefronts and Defendants' Assets with the Financial Institutions, an order to show cause why a preliminary injunction should not issue, an order authorizing bifurcated and alternative service and an order authorizing expedited discovery. (Dkts. 10-14).

10. True and correct copies of the Summons and Complaint are attached hereto as **Exhibit A**.

11. On July 9, 2021, the Court granted Plaintiff's Application and entered the TRO. A true and correct copy of the TRO is attached hereto as **Exhibit B**.

12. The TRO required Defendants to appear on July 30, 2021 at the PI Show Cause Hearing. (Ex. B).

13. The TRO also specifically provided for the following alternative methods of service of

---

[2] Through this Motion for Default Judgment, in addition to permanent injunctive relief, Plaintiff only seeks damages for its First and Second Causes of Action (Trademark Counterfeiting and Infringement). Plaintiff does not seek monetary relief in connection with the remaining causes of action plead in the Complaint. Plaintiff does not seek attorney's fees.

2

the Summons, Complaint, TRO and all documents filed in support of Plaintiff's Application on Defendants: 1) delivery of (i) PDF copies of the TRO together with the Summons and Complaint, and (ii) a link to a secure website (including Nutstore, a large mail link created through Rmail.com and via website publication through a specific page dedicated to this Lawsuit accessible through ipcounselorslawsuit.com) where each Defendant will be able to download PDF copies of the TRO together with the Summons and Complaint, and all papers filed in support of Plaintiff's Application seeking the TRO, to Defendants' e-mail addresses to be determined after having been identified by Amazon pursuant to Paragraph V(C) of the TRO.

14. On July 22, 2021, pursuant to the methods of alternative service authorized by the TRO, Plaintiff served the Summons, Complaint, TRO, all documents filed in support of Plaintiff's Application on each and every Defaulting Defendant, among other Defendants, except for Defendant WOW GIFT who was served on August 3, 2021. (Dkt. 17). A true and correct copy of the Certificate of Service regarding service of the Summons, Complaint and TRO on Defendants is attached hereto as **Exhibit C**.

15. As such, Defendants had until August 12, 2021, except for Defendant WOW GIFT who had until August 24, 2021, to answer the Complaint or move otherwise.

16. Plaintiff appeared at the PI Show Cause Hearing on July 30, 2021, however, no Defaulting Defendants appeared.

17. On that same day, July 30, 2021, the Court entered the PI Order against all Defendants mirroring the terms of the TRO and extending through the pendency of the action. (Dkt. 16).

18. Thereafter, on August 2, 2021, pursuant to the alternative methods of service authorized by the TRO and PI Order, Plaintiff served a copy of the PI Order on each and every Defaulting Defendant. (Dkt. 18).

19. On December 21, 2021, Plaintiff requested an entry of default against Defaulting Defendants from the Clerk of the Court. (Dkts. 59-60).

20. On the same day, December 21, 2021, the Clerk of the Court entered a Certificate of Default against Defaulting Defendants. (Dkt. 62). A true and correct copy of the Certificate of Default from the Clerk of the Court is attached hereto as **Exhibit D**.

21. To date, Defaulting Defendants have neither filed an answer with the Court, responded to the Complaint or otherwise formally appeared in this action. (Ex. D).

## II. DEFAULTING DEFENDANTS' DEFAULTS AND PLAINTIFF'S LACK OF DISCOVERY

22. Although Plaintiff properly effected service of the Summons, Complaint, TRO and all documents filed in support of its Application on all Defaulting Defendants in accordance with the alternative methods of service authorized by the TRO, Defaulting Defendants' failure to answer the Complaint or otherwise appear has deprived Plaintiff of the ability to confirm whether or not Defaulting Defendants ceased manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products. (Exs. C, D).

23. Due to Defaulting Defendants' defaults, Plaintiff was unable to engage in any discovery with Defaulting Defendants regarding the scope of their sales, profits and costs, among other discoverable issues.

24. On July 9, 2021, Plaintiff served the TRO on Amazon, among other Third Party Service Providers and Financial Institutions.

25. Thereafter, pursuant to the expedited discovery ordered in both the TRO and PI Order, counsel for Amazon provided Plaintiff's counsel with a report identifying Defendants' Infringing ASIN Numbers, Merchant Customer IDs, Net Ordered Units, among other things.

4

26. To date, the only discovery Plaintiff was able to obtain regarding Defaulting Defendants' sales was the Amazon Discovery. Based on the Amazon Discovery, Defaulting Defendants collectively sold a minimum of 29,038 Counterfeit Products on Amazon alone. Attached hereto as **Exhibit E** is a true and correct chart detailing 1) each and every Defaulting Defendant's number of sales of Counterfeit Products on Amazon as identified in the Amazon Discovery, 2) Defaulting Defendants' wrongful use(s) of the Baby Shark Marks, and 3) the statutory damages requested by Plaintiff.

27. The Amazon Discovery relates exclusively to Defaulting Defendants' User Accounts and Merchant Storefronts on Amazon. In other words, the Amazon Discovery is far from comprehensive insofar as it does not cover Defaulting Defendants' offering for sale and/or sale of Counterfeit Products on other e-commerce platforms in addition to Amazon. *Id*.

28. In Plaintiff's counsel's experience, it is usual and customary for counterfeiters, such as Defaulting Defendants, to sell across multiple e-commerce platforms.

29. Therefore, Defaulting Defendants probably utilize other e-commerce platforms, such as Wish.com or DHgate.com, as a matter of illustration, to circumvent the TRO and PI Order in order to continue to engage in counterfeiting activities, specifically the sale and/or offering for sale of Counterfeit Products.

30. Consequently, it is extremely likely that the number of sales of Counterfeit Products made by Defaulting Defendants greatly exceeds the numbers identified in the Amazon Discovery.

31. Because Plaintiff is deprived of the ability to prove a specific amount of actual damages, it instead elects to seek statutory damages under the Lanham Act.

32. Plaintiff respectfully seeks an award of Fifty Thousand U.S. Dollars ($50,000.00) in statutory damages against each Defaulting Defendant (fifty-one (51) Defaulting Defendants) pursuant to 15 U.S.C. § 1117©, plus post-judgment interest calculated pursuant to the statutory

5

rate.

33. Plaintiff is not seeking attorney's fees.

### III. EPSTEIN DRANGEL'S UNSUCCESSFUL EFFORTS TO SERVE VIA THE HAGUE IN SIMILAR CASES

34. In February of 2023, Epstein Drangel began the process of serving a total of ninety-two (92) defendants across four (4) different cases through the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague").

35. On August 9, 2023, Epstein Drangel was informed that, at this point, service on only one (1) Defendant (of the ninety-two (92)) has been attempted by the Chinese Central Authority, and such service was unsuccessful.

36. Epstein Drangel was told that the service failed because the defendant's company, which Epstein Drangel's Beijing office, through its diligence, confirmed as connected to the address provided on its merchant storefront, did not in fact occupy that address. In fact, the individuals who reside at the address told the judges who were sent to effectuate service that they had no relationship with defendant's company, do not know any person from the company and further stated that they do not rent space to the defendant company.

37. A true and correct copy of the transcript from the July 14, 2022 Telephone Conference in *FoxMind Canada Enterprises Ltd. v. Abctec, et al.*, 21-cv-5146 (KPF) (S.D.N.Y. July 14, 2022) is attached hereto as **Exhibit F**.

### IV. PLAINTIFF IS ENTITLED TO A FINAL JUDGMENT BY DEFAULT AGAINST DEFAULTING DEFENDANTS

38. Federal Rule of Civil Procedure 55(b) provides for a court-ordered default judgment following the entry of default by the court clerk under Rule 55(a).

39. As aforementioned, Plaintiff has complied with Federal Rule of Civil Procedure 55(a). (Dkts. 59-60, 62).

40. Therefore, Plaintiff respectfully requests that the Court enter default judgment against each and every Defaulting Defendant that remains in this action.

I declare under the penalty of perjury under the laws of the United States of America that to the best of my knowledge the foregoing is true and correct.

Executed on this 11th day of August 2023 in New York, New York.

By: /s/ Gabriela N. Nastasi
Gabriela N. Nastasi