Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone:    (212) 292-5390
Facsimile:    (212) 292-5391
*Attorneys for Plaintiff*
*Smart Study Co., Ltd.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SMART STUDY CO., LTD.,<br><br>*Plaintiff*<br><br>v.<br><br>ACUTEYE-US, APZNOE-US, BEIJINGKANGXINTANGSHANGMAOYOUXIANGONGSI, BLUE VIVI, BONUSWEN, CHANGGESHANGMAOYOUXIANGONGSI, CITIHOMY, CKYPEE, DAFA INTERNATIONAL, DAZZPARTY, FAMING, GAIFEI TRADE CO LTD, GEGEONLY, HAITING$, HAOCHENG-TRADE, HAPPY PARTY-001, HEARTLAND GO, HUIBI-US, JOYSAIL, JYOKER-US1, KANGXINSHENG1, LADYBEETLE, LICHE CUPCAKE STAND, LVYUN, MARY GOOD SHOP, NA-AMZ001, NAGIWART, NUOTING, QINGSHU, QT-US, SALIMHIB-US, SAM CLAYTONDDG, SENSIAMZ BACKDROP, SHENZHENSHIXINDAJIXIEYOUXIANGONGSI, SMASSY US, SMSCHHX, SUJIUMAISUSU, SUNNYLIFYAU, TELIKE, THEGUARD, TONGMUMY, TOPIVOT, TUOYI TOYS, UNE PETITE MOUETTE, VETERANS CLUB a/k/a 老兵俱乐部, WCH- US, WEN MIKE, WONDERFUL MEMORIES, WOW GIFT, XUANNINGSHANGWU, XUEHUA INC, XUIYUI7I, YAMMO202, YICHENY US, | **CIVIL ACTION No.**<br>**21-cv-5860 (GHW)** |

YLILILY,
YONGCHUNCHENGQINGMAOYIYOUXIANGONGSI,
YOOFLY and ZINGON US,

*Defendants*

**PLAINTIFF'S RESPONSE TO AUGUST 17, 2022 ORDER TO SHOW CAUSE**

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................... 1

II.  ARGUMENT ................................................................................................................. 1

   **A.  ALTERNATIVE SERVICE THROUGH ELECTRONIC MEANS UNDER FED. R.
   CIV. P. 4(F)(3) IS PERMISSIBLE WHERE THE HAGUE APPLIES ............................. 1**

      1.   Service by Electronic Means is Not Prohibited by the Hague .................................... 3

      2.   China's Objection to Article 10(a) Does Not Constitute an Objection to Service by
      Email 5

      3.   Chinese Law Allows for Service via Electronic Means in Its Own Courts of General
      Jurisdiction and Accordingly Service via Electronic Means Is Proper Under Fed. R. Civ. P.
      4(f)(2)(A) ........................................................................................................................ 7

   **B.  EVEN IF THE HAGUE APPLIES, ARTICLE 15 ALLOWS FOR ALTERNATIVE
   SERVICE AT THE DEFAULT JUDGMENT STAGE ........................................................ 9**

      4.   Service by Electronic Means Comports with Due Process ....................................... 10

III. CONCLUSION ............................................................................................................ 12

## TABLE OF AUTHORITIES

**Cases**

*Aircraft Engine Lease Finance, Inc. v. Plus Ultra Lineas Aereas, S.A.*, 21 Civ. 1758 (JSR), 2021 U.S. Dist. LEXIS 251935 (S.D.N.Y. Apr. 23, 2021) .................................................. 5

*Anova Applied Elecs., Inc. v. Hong King Grp., Ltd.*, 334 F.R.D. 465 (D. Mass. 2020) ................ 6

*Appel v. Hayut*, 20 Civ. 6265 (JPC), 2020 U.S. Dist. LEXIS 229322 (S.D.N.Y. Dec. 7, 2020).... 8

*Bandyopadhyay v. Defendant 1*, No. 22-cv-22907-BLOOM/Otazo-Reyes, 2022 U.S. Dist. LEXIS 212221 (S.D. Fla. Nov. 22, 2022) ..................................................................... 6

Celgard, LLC v. Shenzen Senior Tech. Material Co., No. 3:20-cv-130-GCM, 2020 U.S. Dist. LEXIS 89487 (W.D.N.C. May 20, 2020) ..................................................................... 1

*Chanel, Inc. v. Handbagstore*, No. 20-CV-62121-RUIZ/STRAUSS, 2021 WL 3060329 (S.D. Fla. June 30, 2021) ........................................................................................................ 5

*Dev. Specialists, Inc. v. Li (In re Coudert Bros. LLP)*, No. 16 Civ. 8237 (KMK), 2017 U.S. Dist. LEXIS 71435 (S.D.N.Y. May 9, 2017) ................................................................. 8

*Doe v. Hyassat*, 342 F.R.D. 53 (S.D.N.Y. 2022) .......................................................................... 6

*Elsevier, Inc. v. Siew Yee Chew*, 287 F. Supp. 3d 374 (S.D.N.Y. 2018) ....................................... 2

*F.T.C. v. Pecon Software Ltd.*, No. 12-cv-7186 (PAE), 2013 U.S. Dist. LEXIS 111375 (S.D.N.Y. Aug. 7, 2013) ......................................................................................................... 6

*Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323 (E.D.N.Y. 2021) ........................................... 6

*Hangzhou Chic Intelligent Tech. Co. v. P'ships & Unincorporated Ass'n Identified on Schedule A*, No. 20 C 4806, 2021 WL 1222783 (N.D. Ill. Apr. 1, 2021) ............................................. 5, 8

*Hudson Furniture, Inc. v. Mizrahi*, No. 2022-1290, 2022 U.S. App. LEXIS 31590 (Fed. Cir. Nov. 16, 2022) ......................................................................................................... 3

*In re Bibox Grp. Holdings Sec. Litig.*, No. 20cv2807(DLC), 2020 WL 4586819 (S.D.N.Y. Aug. 10, 2020) ......................................................................................................... 7

*Kaneka Corp. v. Purestart Chem Enter. Co.*, 16 Civ. 4861 (MKB) (SIL), 2017 U.S. Dist. LEXIS 228150 (E.D.N.Y. Oct. 17, 2017) ................................................................. 11

*Lonati, S.P.A. v. Soxnet, Inc.*, CV 20-5539-GW-JPRx, 2021 U.S. Dist. LEXIS 258574 (C.D. Cal. Dec. 27, 2021) ......................................................................................................... 9

*Luxottica Grp. S.p.A. v. P'ships, et al.*, 18 Civ. 2188, 2019 WL 2357011 (N.D. Ill. June 4, 2019) ......................................................................................................... 7

*Luxottica Grp. S.p.A. v. P'ships, et al.*, 391 F. Supp. 3d 816 (N.D. Ill. 2019) .............................. 6

*MacLean—Fogg Co. v. Ningbo Fastlink Equip. Co.*, No. 08 CV 2593, 2008 WL 5100414 (N.D. Ill. Dec. 1, 2008) ......................................................................................................... 4

*Mattel, Inc. v. Animefunstore, et al.*, 18 Civ. 8824 (LAP) (Dkt. 81) (S.D.N.Y. May 1, 2020) ....... 10

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ............................................. 10

*NBA Props. v. P'ships & Unincorporated Ass'ns*, 549 F. Supp. 3d 790 (N.D. Ill. 2021) .... 3, 4, 11

*Oakley, Inc. v. P'ships & Unincorporated Ass'ns Identified in Schedule "A"*, No. 20-cv-05049, 2021 U.S. Dist. LEXIS 128234 (N.D. Ill. July 9, 2021) .............................................. 5

*Ouyeinc Ltd. v. Alucy*, No. 20 C 3490, 2021 WL 2633317 (N.D. Ill. June 25, 2021) ............... 4, 11

*Patrick's Rest., LLC v. Singh*, No. 18-cv-00764 (ECT/KMM), 2019 U.S. Dist. LEXIS 2535 (D. Minn. Jan. 7, 2019) ......................................................................................................... 4, 5

*Pearson Educ. Inc. v. Doe 1*, 18 Civ. 7380 (PGG)(OTW), 2019 U.S. Dist. LEXIS 210349 (S.D.N.Y. Dec. 2, 2019) ......................................................................................................... 10

*Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc.*, 2017 WL 11509784 (S.D.N.Y. 2020) .................................................................................................................................... 5

*Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc.*, No. 17 Civ. 5553 (LGS), 2020 U.S. Dist. LEXIS 228149 (S.D.N.Y. Dec. 4, 2020) .................................................... 2

*Rio Props, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) ...................................... 7, 11

*SEC v. Anticevic*, No. 05 CV 6991 (KMW), 2009 WL 361739 (S.D.N.Y. Feb. 8, 2009) .............. 3

*ShelterZoom Corp. v. Goroshevsky*, 19-cv-10162 (AJN), 2020 WL 4252722 (S.D.N.Y. July 23, 2020) .................................................................................................................................... 6

*Smart Study Co. v. Acuteye-Us*, No. 21 Civ. 5860 (GHW), 2022 U.S. Dist. LEXIS 129872 (S.D.N.Y. July 21, 2022) ................................................................................................ passim

*Strabala v. Zhang*, 318 F.R.D. 81 (N.D. Ill. 2016) .................................................................. 10

*Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329 (S.D.N.Y. 2015) .............. 2, 4, 6, 10

*The Neck Hammock, Inc v. Danezen.com*, 2020 WL 6364598 (D. Utah Oct. 29, 2020) .............. 6

*Victaulic Co. v. Allied Rubber & Gasket Co.*, No. 3:17-cv-01006-BEN-JLB, 2020 U.S. Dist. LEXIS 82150 (S.D. Cal. May 8, 2020) .............................................................................. 2

*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988) ...................................... 4, 7

*Water Splash, Inc. v. Menon,* 581 U.S. 271 (2017) .............................................................. 3, 4, 7

*Zanghi v. Ritella*, 19 Civ. 5830 (NRB), 2020 U.S. Dist. LEXIS 20279 (S.D.N.Y. Feb. 5, 2020) .. 10

*Zuru (Singapore) PTE., Ltd. v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, 22 Civ. 2483 (LGS), 2022 U.S. Dist. LEXIS 195268 (S.D.N.Y. Oct. 26, 2022) .............................................................................................. 2

**Statutes**

Fed. R. Civ. P. 4(f)(2)(A) ........................................................................................................ 8

Fed. R. Civ. P. 4(f)(3) ............................................................................................................ 3

## GLOSSARY

| Term | Definition | Docket Entry Number |
|---|---|---|
| **Plaintiff or Smart** | Smart Study Co., Ltd. | N/A |
| **Defendants** | Acuteye-US, APZNOE-US, beijingkangxintangshangmaoyouxiangongsi, blue vivi, Bonuswen, changgeshangmaoyouxiangongsi, Citihomy, Ckypee, DAFA International, Dazzparty, FAming, GaiFei Trade Co Ltd, GeGeonly, HAITing$, Haocheng-Trade, HAPPY PARTY-001, Heartland GO, Huibi-US, Joysail, Jyoker-US1, Kangxinsheng1, LADYBEETLE, LICHE Cupcake stand, lvyun, Mary good shop, NA-AMZ001, Nagiwart, nuoting, Qingshu, QT-US, SALIMHIB-US, SAM CLAYTONddg, Sensiamz Backdrop, shenzhenshixindajixieyouxiangongsi, SMASSY US, SMSCHHX, sujiumaisusu, sunnylifyau, telike, Theguard, tongmumy, Topivot, Tuoyi Toys, Une petite mouette, Veterans Club a/k/a 老兵俱乐部, wch- us, WEN MIKE, WONDERFUL MEMORIES, WOW GIFT, xuanningshangwu, XueHua INC, Xuiyui7i, YAMMO202, Yicheny US, YLILILY, yongchunchengqingmaoyiyouxiangongsi, YooFly and Zingon US | N/A |
| **Defaulting Defendants** | Acuteye-US, APZNOE-US, beijingkangxintangshangmaoyouxiangongsi, blue vivi, Bonuswen, changgeshangmaoyouxiangongsi, Citihomy, Ckypee, DAFA International, Dazzparty, FAming, GeGeonly, HAITing$, Haocheng-Trade, HAPPY PARTY-001, Heartland GO, Huibi-US, Joysail, Jyoker-US1, Kangxinsheng1, LADYBEETLE, LICHE Cupcake stand, lvyun, Mary good shop, NA-AMZ001, Nagiwart, nuoting, Qingshu, QT-US, SALIMHIB-US, SAM CLAYTONddg, Sensiamz Backdrop, shenzhenshixindajixieyouxiangongsi, SMASSY US, SMSCHHX, sujiumaisusu, telike, Theguard, tongmumy, Une petite mouette, Veterans Club a/k/a 老兵俱乐部, wch- us, WEN MIKE, WONDERFUL MEMORIES, WOW GIFT, xuanningshangwu, XueHua INC, Xuiyui7i, YAMMO202, Yicheny US, yongchunchengqingmaoyiyouxiangongsi, YooFly and Zingon US | N/A |

| | | |
|---|---|---|
| **Amazon** | Amazon.com, a Seattle, Washington-based, online marketplace and e-commerce platform owned by Amazon.com, Inc., a Delaware corporation, that allows manufacturers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their retail products, which, upon information and belief, primarily originate from China, directly to consumers worldwide and specifically to consumers residing in the U.S., including New York | N/A |
| **Sealing Order** | Order to Seal File entered on July 6, 2021 | Dkt. 1 |
| **Complaint** | Plaintiff's Complaint filed on July 8, 2021 | Dkt. 4 |
| **Application** | Plaintiff's *ex parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery filed on July 8, 2021 | Dkts. 10-13 |
| **Yang Dec.** | Declaration of Su Jeong Yang in Support of Plaintiff's Application | Dkt. 13 |
| **Futterman Dec.** | Declaration of Danielle S. Futterman in Support of Plaintiff's Application | Dkt. 12 |
| **TRO** | 1) Temporary Restraining Order; 2) Order Restraining Merchant Storefronts and Defendants' Assets with the Financial Institutions; 3) Order to Show Cause Why a Preliminary Injunction Should Not Issue; 4) Order Authorizing Bifurcated and Alternative Service; and 5) Order Authorizing Expedited Discovery entered on July 9, 2021 | Dkt. 14 |
| **PI Show Cause Hearing** | July 30, 2021 hearing to show cause why a preliminary injunction should not issue | N/A |
| **PI Order** | July 30, 2021 Preliminary Injunction Order | Dkt. 16 |
| **User Account(s)** | Any and all websites and any and all accounts with online marketplace platforms such as Amazon, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them | N/A |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, | N/A |

| | | |
|---|---|---|
| | export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them | |
| **Baby Shark Content** | One of Smart's most successful creations, which is the Pinkfong "Baby Shark" song and viral music video with characters | N/A |
| **Baby Shark Registrations** | U.S. Trademark Registration Nos.: 5,803,108 for "BABY SHARK" for a variety of goods in Class 28; 5,483,744 for "PINKFONG" for a variety of goods in Classes 3 and 21; 5,327,527 for "PINKFONG" for a variety of goods in Classes 9, 16 and 28; 4,993,122 for "PINKFONG" a variety of goods in Classes 9 and 25; 6,138,374 for **pinkfong** for a variety of goods in Class 41; 6,337,210 for "PINKFONG BABY SHARK" for a variety of goods in Class 21 and 6,021,523 for **pinkfong Baby Shark** for a variety of goods in Class 28 | N/A |
| **Baby Shark Applications** | U.S. Trademark Serial Application Nos.: 79/253,035 for registration of "BABY SHARK" for a variety of goods in Classes 41, 25, 16 and 9; 88/396,786 for registration of "PINKFONG BABY SHARK" for a variety of goods in Class 25; 88/529,984 for registration of "PINKFONG" for a variety of goods in Class 2, 3, 9, 14, 16, 18, 20, 21, 24, 25, 26, 27, 28, 29, 30, 32, 41; 88/530,086 for registration of "BABY SHARK" for a variety of goods in Class 2, 3, 9, 14, 16, 18, 20, 21, 24, 25, 26, 27, 28, 29, 30, 32, 41; 88/594,141 for "PINKFONG" for a variety of goods in Class 5; and 88/594,122 for "BABY SHARK" for a variety of goods in Class 5 | N/A |
| **Baby Shark Marks** | The Baby Shark Registrations and Baby Shark Applications | N/A |
| **Baby Shark Works** | U.S. Copyright Registration Nos.: VA 2-130-856, covering Baby Shark; VA 2-130-847, covering Daddy Shark; VA 2-130-854, covering Mommy Shark; VA 2-131-983, covering Pink Fong Mascot; SR 823-609, covering Baby Shark (Sound Recording and Music); PA 2-142-905, covering Baby Shark (Motion Picture) | N/A |
| **Baby Shark Products** | Smart has developed and initiated an extensive worldwide licensing program for a wide variety of consumer products such as toys, sound books, t-shirts, | N/A |

| | | |
|---|---|---|
| | associated with and/or related to the Baby Shark Content | |
| **Counterfeit Products** | Products bearing or used in connection with the Baby Shark Marks and/or Baby Shark Works, and/or products in packaging and/or containing labels and/or hang tags bearing the Baby Shark Marks and/or Baby Shark Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the Baby Shark Marks and/or Baby Shark Works and/or products that are identical or confusingly or substantially similar to the Baby Shark Products | N/A |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) | N/A |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) | N/A |
| **Financial Institutions** | Any banks, financial institutions, credit card companies and payment processing agencies, such as Amazon.com, Inc., Amazon Payments, Inc. ("Amazon Pay"), PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), PingPong Global Solutions, Inc. ("PingPong") and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of Defendants | N/A |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, those owned and operated, directly or indirectly, by Amazon, such as Amazon.com, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise | N/A |
| **Defendants' Frozen Assets** | Defendants' Assets from Defendants' Financial Accounts that were and/or are attached and frozen or restrained pursuant to the TRO and/or PI Order, or which are attached and frozen or restrained pursuant to any future order entered by the Court in this Action | N/A |
| **Amazon Discovery** | The supplemental report identifying Defendants' Infringing ASIN Number, Merchant Customer ID, Net | N/A |

Case 1:21-cv-05860-GHW Document 137 Filed 12/04/23 Page 11 of 23

| | Ordered Units, among other things, provided by counsel for Amazon to Plaintiff's counsel pursuant to the expedited discovery ordered in both the TRO and PI Order | |
|---|---|---|
| **Plaintiff's Motion for Default Judgment** | Plaintiff's Application for an Order to Show Cause Why Default Judgment and a Permanent Injunction should not be entered Against Defaulting Defendants filed on February 11, 2022 | Dkts. 77-80 |
| **Sands Dec.** | Declaration of Ashly E. Sands in Support of Plaintiff's Response to this Court's August 17, 2022 Order to Show Cause | Dkt. 109 |

# I.   <u>INTRODUCTION</u>[1]

On November 20, 2023, this Court issued an Order to Show Cause directing Plaintiff to show cause, by December 4, 2023, as to why this action should not be dismissed for failure to serve process in accordance with Federal Rule of Civil Procedure 4(f) ("11/20/23 OSC"). (Dkt. 135). Plaintiff respectfully submits that this case should not be dismissed for failure to serve process on the remaining two (2) Defendants, specifically, Defendant changgeshangmaoyouxiangongsi and Defendant shenzhenshixindajixieyouxiangongsi, to whom this Court has found that the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague") does apply ("Hague Defendants") because, as Plaintiff respectfully submits herein, the Hague Defendants have been properly served via alternative means pursuant to Fed. R. Civ. P. 4(f)(3).

# II.   <u>ARGUMENT</u>

## A.   **ALTERNATIVE SERVICE THROUGH ELECTRONIC MEANS UNDER FED. R. CIV. P. 4(F)(3) IS PERMISSIBLE WHERE THE HAGUE APPLIES**

Plaintiff respectfully submits that although the Hague applies to the Hague Defendants, the alternative service granted in the TRO and PI Order was appropriate and permissible and not a violation of the Hague, U.S. law or Chinese law.

Alternative service pursuant to Fed. R. Civ. P. 4(f)(3) was particularly appropriate here based on the exigent circumstances surrounding Plaintiff's Application. *Celgard, LLC v. Shenzen Senior Tech. Material Co.*, No. 3:20-cv-130-GCM, 2020 U.S. Dist. LEXIS 89487, at *8-9 (W.D.N.C. May 20, 2020) (Plaintiffs may request service via email in cases of emergency per the Hague). Rule 4(f)(3) allows service *by other means* than those internationally agreed upon, so long as they are not specifically prohibited by international agreement. *Id.* Thus, under Rule 4(f)(3),

---

[1] Where a defined term is referenced herein and not defined herein, the defined term should be understood as it is defined in the Glossary.

Plaintiff may request service via email—which, as addressed in further detail below, is not prohibited by the Hague or otherwise—regardless of whether the Hague is applicable.

By its terms, the decision whether to authorize alternative service under Rule 4(f)(3) is left to the Court's discretion. *See Elsevier, Inc. v. Siew Yee Chew*, 287 F. Supp. 3d 374, 377 (S.D.N.Y. 2018) "Where service may be authorized by Rule 4(f)(3), Plaintiff need not attempt, and courts need not give preference to, means of service under Rule 4(f)(1) or 4(f)(2). *Zuru (Singapore) PTE., Ltd. v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, 22 Civ. 2483 (LGS), 2022 U.S. Dist. LEXIS 195268, at *2 (S.D.N.Y. Oct. 26, 2022) (citing *Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc.*, No. 17 Civ. 5553 (LGS), 2020 U.S. Dist. LEXIS 228149, at *4 (S.D.N.Y. Dec. 4, 2020) (noting that "Rule 4(f) is not hierarchical" and service may be authorized under Rule 4(f)(3) "even if the method of service is in contravention of the laws of the foreign country" and thus precluded under 4(f)(2)); *see also Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 330 (S.D.N.Y. 2015) ("[s]ervice under subsection [4(f)] (3) is neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant."). Although compliance with the Hague is required when it is applicable, and as such, a court is "'prohibited from issuing a Rule 4(f)(3) order in contravention of ... the Hague'. . .the Ninth Circuit [among other circuits, as noted herein] has rejected the contention that Rule 4(f)(3) can only be utilized if other methods of service have failed or been shown to be unduly burdensome." *Victaulic Co. v. Allied Rubber & Gasket Co.*, No. 3:17-cv-01006-BEN-JLB, 2020 U.S. Dist. LEXIS 82150, at *6-7 (S.D. Cal. May 8, 2020) (citing *Rio Properties, Inc.*, 284 F.3d at 1016). In finding alternative service was proper on Chinese defendants, the Fifth Circuit recently confirmed, even where the Hague does apply, "[s]ervice pursuant to the Hague Convention listed in subjection (f)(1), does not displace

2

subsection (f)(3), which permits service by other means." *Viahart, L.L.C. v. GangPeng*, No. 21-40166, 2022 WL 445161, at *3 (5th Cir. Feb. 14, 2022).  Most recently, the Federal Circuit, on appeal from the District Court similarly found that no blanket requirement exists to attempt service by conventional means before alternative service is permitted. *Hudson Furniture, Inc. v. Mizrahi*, No. 2022-1290, 2022 U.S. App. LEXIS 31590, at *6-7 (Fed. Cir. Nov. 16, 2022).  Accordingly, because service pursuant to the Hague does not displace Rule 4(f)(3), alternative service by electronic means pursuant to Rule 4(f)(3) is not in contravention of the Hague as discussed herein, such service, was, and remains permissible here.

### 1.  Service by Electronic Means is Not Prohibited by the Hague

Fed. R. Civ. P. 4(f)(3) enables a court to grant an alternative method of service so long as it: "(1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *SEC v. Anticevic*, No. 05 CV 6991 (KMW), 2009 WL 361739, at *7 (S.D.N.Y. Feb. 8, 2009) citing Fed. R. Civ. P. 4(f)(3). Despite this Court's holding to the contrary in this action[2], the alternative service requested by Plaintiff in its Application (i.e., service by electronic means) and granted in the TRO and PI Order, is not prohibited by any international agreement. As detailed further herein, this has been confirmed by *Advanced Access Content Sys.*, 2018 U.S. Dist. LEXIS 169603. Moreover, while *Smart Study* suggests that the holding in *Water Splash, Inc. v. Menon,* 581 U.S. 271 (2017) "indicated" that the only permissible methods of service are those "specified" in the Hague, many courts have opined that, "the Convention neither authorizes nor prohibits service by email—it is entirely silent on the issue." *NBA Props. v. P'ships & Unincorporated Ass'ns*, 549 F. Supp. 3d 790, 797 (N.D. Ill. 2021) (citing *MacLean—Fogg Co. v.*

---

[2] *Smart Study Co. v. Acuteye-Us*, No. 21 Civ. 5860 (GHW), 2022 U.S. Dist. LEXIS 129872 (S.D.N.Y. July 21, 2022).

*Ningbo Fastlink Equip. Co.*, No. 08 CV 2593, 2008 WL 5100414, at *2 (N.D. Ill. Dec. 1, 2008); *Sulzer Mixpac*, 312 F.R.D. at 331; *Ouyeinc Ltd. v. Alucy*, No. 20 C 3490, 2021 WL 2633317, at *3 (N.D. Ill. June 25, 2021).

Notably, *Water Splash* concerned neither Fed. R. Civ. P. 4(f)(3) nor service via email. This Court reached this conclusion based on a quotation to *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988)) in the nonbinding dicta of *Water Splash*. More specifically, in the opening of the *Water Splash* opinion, prior to the Supreme Court's identification of the operative question in the case, it recited an excerpt of *Volkswagenwerk*, namely, "the Hague Service Convention specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies.'" *Smart Study*, 2022 U.S. Dist. LEXIS 129872, at *19-20 (quoting *Water Splash.*, 581 U.S. at 273) (quoting *Volkswagenwerk*). Courts have noted "*Water Splash* recited this excerpt of *Volkswagenwerk* in an effort to provide background information not in any way connected to the Court's substantive analysis… It is quintessential dicta…" *Patrick's Rest., LLC v. Singh*, No. 18-cv-00764 (ECT/KMM), 2019 U.S. Dist. LEXIS 2535, at *6-7 (D. Minn. Jan. 7, 2019); *see also NBA Props. v. P'ships & Unincorporated Ass'ns*, 549 F. Supp. 3d 790, 797 (N.D. Ill. 2021) ("With respect, the Court declines to adopt Defendant's interpretation of *Schlunk* and *Water Splash*. As the *MacLean—Fogg, Sulzer Mixpac*, and *Ouyeinc* courts observed, the Convention neither authorizes nor prohibits service by email—it is entirely silent on the issue.") (citing *MacLean—Fogg Co. v. Ningbo Fastlink Equip. Co.*, No. 08 CV 2593, 2008 U.S. Dist. LEXIS 97241, at *2 (N.D. Ill. Dec. 1, 2008)); *Ouyeinc Ltd. v. Alucy*, No. 20 C 3490, 2021 U.S. Dist. LEXIS 118876, at *3 (N.D. Ill. June 25, 2021)). Respectfully, this Court's reliance on *Water Splash* is solely on non-binding dicta, and there is no provision in the Hague that expressly limits service to the methods delineated— of which email is clearly not one, given that it was not in existence when the Hague was drafted. *See*

*Oakley, Inc. v. P'ships & Unincorporated Ass'ns Identified in Schedule "A"*, No. 20-cv-05049, 2021 U.S. Dist. LEXIS 128234 (N.D. Ill. July 9, 2021) ("Defendant has not directed the Court to any provision of the Convention that limits a party to the methods of service enumerated in the Convention or that requires a party to exhaust the Convention's methods before pursuing other methods"); *see also Patrick's Rest.*, 2019 U.S. Dist. LEXIS 2535, at *2-3 (noting that the Hague and Fed. R. Civ. P. 4(f)(3) do not contain an exhaustion requirement and holding that service by email may be unenumerated in the Convention while "still not inconsistent with" the Hague); and *Aircraft Engine Lease Finance, Inc. v. Plus Ultra Lineas Aereas, S.A.*, 21 Civ. 1758 (JSR), 2021 U.S. Dist. LEXIS 251935, at *2 (S.D.N.Y. Apr. 23, 2021) ("[T]he Hague Convention does not address service by email, and therefore does not prohibit such service.").

### 2. China's Objection to Article 10(a) Does Not Constitute an Objection to Service by Email

Despite China's objection to service by postal channels under Article 10, China's governing bodies (i.e. the National People's Congress and its Standing Committee) have not made any interpretations regarding whether the reservation to Article 10(a) includes email and this Court, along with many others, has held that such objection does not include service by email[3] and further, that service by email is not prohibited by any international agreement.[4] *See, e.g. Equipav S.A.*, 2022 U.S. Dist. LEXIS 124987, at *5 (finding that the Hague does not prohibit service via e-

---

[3] U.S. Courts have also found that since China allows its own courts to "order service of Chinese process by email on defendants outside China, it cannot credibly object to U.S. courts ordering the same on defendants located in China". *See Hangzhou Chic Intelligent Tech. Co. v. P'ships & Unincorporated Ass'n Identified on Schedule A*, No. 20 C 4806, 2021 WL 1222783, at *11-12 (N.D. Ill. Apr. 1, 2021) ("Chinese law permits its courts to order service by email on a party outside of China, in part because email permits the person to be served 'acknowledge' receipt." *See id.* at 8 (p. 47, Article 267) ("A people''s court may serve procedural documents on a party without a domicile within the People's Republic of China in the following ways: . . . Service by . . . e-mail and any other means through which the receipt of the document may be acknowledged."); *see also Chanel, Inc. v. Handbagstore*, No. 20-CV-62121-RUIZ/STRAUSS, 2021 WL 3060329, at *25-30 (S.D. Fla. June 30, 2021); *see also Smart Study*, Dkt. 98 at ¶ 11..

[4] International law, not foreign law, is the relevant law for an analysis under Rule 4(f)(3). *See Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc.*, 2017 WL 11509784, at *23 (S.D.N.Y. 2020) (noting that "Rule 4(f)(3) does not require a finding that the method of service ordered is permitted under foreign law.").

mail despite the fact that Brazil has objected to Article 10 of the Hague regarding service by mail); *ShelterZoom Corp. v. Goroshevsky*, 19-cv-10162 (AJN), 2020 WL 4252722, at *2 (S.D.N.Y. July 23, 2020) ("[N]umerous courts have held that service by email does not violate any international agreement, even when a country objects to Article 10 of the Hague Convention[.]" (quotation marks and citation omitted)); *Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 343 (E.D.N.Y. 2021) ("Courts in the Second Circuit have generally found that email is not a postal channel and that service by email is authorized if the signatory country has not explicitly objected to service by electronic means.") (collecting cases); *Doe v. Hyassat*, 342 F.R.D. 53 (S.D.N.Y. 2022) ("Although Austria has objected to Article 10(a) of the Hague Service Convention — which permits service via 'postal channels'— such an objection does not extend to service via email.") (citing *F.T.C. v. Pecon Software Ltd.*, No. 12-cv-7186 (PAE), 2013 U.S. Dist. LEXIS 111375, at *5 (S.D.N.Y. Aug. 7, 2013) ("Numerous courts have held that service by email does not violate any international agreement where the objections of the recipient nation are limited to those means enumerated in Article 10." (citations omitted)); *Bandyopadhyay v. Defendant 1*, No. 22-cv-22907-BLOOM/Otazo-Reyes, 2022 U.S. Dist. LEXIS 212221 (S.D. Fla. Nov. 22, 2022) (noting that "[w]here a signatory nation has objected to the alternative means of service provided by the Hague Convention, that objection is expressly limited to those means and does not represent an objection to other forms of service, such as e-mail or website posting", and finding service via NFT and posting on a designated website was permissible on Chinese defendants); *see also, e.g. Sulzer*, 312 F.R.D. at 332; *Anova Applied Elecs., Inc. v. Hong King Grp., Ltd.*, 334 F.R.D. 465, 471 (D. Mass. 2020); *The Neck Hammock, Inc v. Danezen.com*, 2020 WL 6364598, at *4 (D. Utah Oct. 29, 2020); *Smart Study*, Dkt. 98. In *Luxottica Grp. S.p.A. v. P'ships, et al.*, 391 F. Supp. 3d 816 (N.D. Ill. 2019) the court disagreed with this Court's holding in *Sulzer*, finding China's objection to service

6

via postal channels is an objection to service by email in reliance on *Water Splash*. Yet, on a motion

for reconsideration, the *Luxottica* court conceded that the Supreme Court did not "conclusively

settle the precise questions" because neither *Water Splash* nor *Volkswagenwerk Aktiengesellschaft*

*v. Schlunk*, 486 U.S. 694 (1988) involved Rule 4(f)(3) or e-mail service. *Luxottica Grp. S.p.A. v.*

*P'ships, et al.*, 18 Civ. 2188, 2019 WL 2357011, at *3 (N.D. Ill. June 4, 2019); *see also In re Bibox*

*Grp. Holdings Sec. Litig.*, No. 20cv2807(DLC), 2020 WL 4586819, at *5 (S.D.N.Y. Aug. 10,

2020) ("Service by email or social media are not among those listed in Article 10. Courts have

understood objections to the alternative channels of service in Article 10 to be limited to the

methods specifically enumerated therein."); *see also Smart Study*, Dkt. 98.

Moreover, Plaintiff further respectfully submits that an analysis of Chinese law is irrelevant

here for purposes of Rule 4(f)(3). In *Advanced Access Content*, where the defendant argued that

email service violated the laws of China, this Court held "[e]ven if true, the fact that email service

does not comport with Chinese law or instructions from the Chinese government under the Hague

Convention is inapposite to the Rule 4(f)(3) inquiry, which, requires only that service is not

prohibited by international agreement." 2018 U.S. Dist. LEXIS 169603 at *13; *see also, Rio Props,*

*Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) ("As obvious from its plain

language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by

international agreement," and "no other limitations are evident from the text."); *see also Smart*

*Study*, Dkt. 98 at ¶ 11.

### 3. Chinese Law Allows for Service via Electronic Means in Its Own Courts of General Jurisdiction and Accordingly Service via Electronic Means Is Proper Under Fed. R. Civ. P. 4(f)(2)(A)

This Court need not even reach the alternative argument of Fed. R. Civ. P. 4(f)(2)(A), given

that service is clearly proper under Fed. R. Civ. P. 4(f)(3), as set forth above. Nevertheless,

pursuant to Fed. R. Civ. P. 4(f)(2)(A), service may occur at a place not within any judicial district of the U.S. "if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice . . . as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction." Fed. R. Civ. P. 4(f)(2)(A). "While this precise issue has not been explicitly ruled on by any other court in the Second Circuit, courts have appeared to implicitly accept that Rule 4(f)(2)(A) allows for service through any method…permitted by the recipient country." *Dev. Specialists, Inc. v. Li (In re Coudert Bros. LLP)*, No. 16 Civ. 8237 (KMK), 2017 U.S. Dist. LEXIS 71435, at *34-35 (S.D.N.Y. May 9, 2017); *see also Appel v. Hayut*, 20 Civ. 6265 (JPC), 2020 U.S. Dist. LEXIS 229322, at *1 (S.D.N.Y. Dec. 7, 2020) ("Rule 4(f)(2)(A) on its face appears to allow, without limitation, service by mail if the recipient country so allows.").

China's courts of general jurisdiction allow for service electronically. *See e.g. Hangzhou Chic Intelligent Tech. Co.*, 2021 U.S. Dist. LEXIS 64064, at *11; A779, A781-A782; *Moonbug Entertainment Limited et al. v. Akwugfdfo1ddc et al.*, No. 22 Civ. 5044 (PKC), Nastasi Decl., Ex. A, ¶¶ 19-21, Ex. 17, ECF No. 25-1, 2. In fact, China has recently amended a law (which will take effect on January 1, 2024) for serving entities without domicile in China to allow service via electronic means that can confirm receipt by the recipient[5]. Accordingly, because the most natural reading of Rule 4(f)(2)(A), on its face and in context, is that service may be effected by any means allowed by the law of the recipient country, and because the law of China permits service via email and other electronic means, Appellant submits that service on Hague Defendants via registered

---

[5] Arendse Huld, China Amends Civil Procedure Law: Impact on Foreign Companies, CHINA BRIEFING, Sept. 14, 2023, https://www.china-briefing.com/news/china-civil-procedure-law-amendment-impact-foreign-businesses/.

electronic mail with confirmation of delivery by Rmail, and website publication was appropriate and effective under Rule 4(f)(2)(A).

**B.      EVEN IF THE HAGUE APPLIES, ARTICLE 15 ALLOWS FOR ALTERNATIVE SERVICE AT THE DEFAULT JUDGMENT STAGE**

Default judgment can be entered under Article 15 of the Hague, which sets forth certain service conditions that must be met in order to enter a default judgment if a defendant has not appeared. In fact, the express purpose of Article 15 is to provide the minimum requirements for obtaining a default judgment. Notably, among the multiple exceptions to the Article 15 service requirements that are provided therein, is the last provision of Article 15, which states "[n]otwithstanding the provisions of the preceding paragraphs, the judge may order, in the case of urgency, **any** provisional or protective measures." Hague, Art. 15 (*emphasis added*). This is the source of the language that allows for alternative service in exigent circumstances, like those that are present here.

Despite initially granting Plaintiff's request for alternative service on China-based defendants in the TRO and PI Order, at the default judgment stage, Your Honor found that service by email did not meet the requirements under Article 15, and thus, the Court could not enter default judgment against the Defaulting Defendants. *Smart Study*, 2022 U.S. Dist. LEXIS 129872 at *34-*39. Plaintiff respectfully submits that the alternative service authorized by Your Honor in the TRO and PI Order falls under the last provision of Article 15. As articulated in Plaintiff's Application and as at least one other court has ruled, the circumstances surrounding Plaintiff's request for a TRO were urgent, and thus, Plaintiff respectfully submits that alternative service was warranted under Fed. R. Civ. P. 4(f)(3) and the urgency exception to Article 15. *See also, e.g.*, *Lonati, S.P.A. v. Soxnet, Inc.*, CV 20-5539-GW-JPRx, 2021 U.S. Dist. LEXIS 258574 (C.D. Cal. Dec. 27, 2021) (finding alternative service through email and facsimile warranted under the

urgency exception of Article 15 and plaintiffs met the requirements of Fed. R. Civ. Pro. 4(f)(3));
*Strabala v. Zhang*, 318 F.R.D. 81, 114 (N.D. Ill. 2016) ("Court-directed service pursuant to Rule
4(f)(3) is appropriate when, for example, 'there is a need for speed that cannot be met by following
the Hague Convention methods. . . .'") (quoting 4B FED. PRAC.  PROC. CIV. § 1134 (4th ed.))).
It simply defies logic that if a judge has broad authority under Article 15 to order alternative
measures at the early stages of a case—such as at a case's infancy or in connection with a
temporary restraining order, like in this case—that Article 15 would prohibit such measures at the
default judgment stage when Article 15, by its terms, defines the circumstances under which a
default judgment can be entered.

### 4.  Service by Electronic Means Comports with Due Process

Additionally, service on Defendants via email (or other electronic means) comports with due
process, as it is "reasonably calculated, under all circumstances, to apprise interested parties of the
pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent.*
*Hanover Bank & Trust Co.*, 339 U.S. 306, 309 (1950); *see also Zanghi v. Ritella*, 19 Civ. 5830
(NRB), 2020 U.S. Dist. LEXIS 20279, at *6 (S.D.N.Y. Feb. 5, 2020) (judicial approval of service
via email is generally supported by facts indicating that the person to be served will likely receive
the documents); *Pearson Educ. Inc. v. Doe 1*, 18 Civ. 7380 (PGG)(OTW), 2019 U.S. Dist. LEXIS
210349, at *3 (S.D.N.Y. Dec. 2, 2019) ("Email service has also repeatedly been found by courts to
meet the requirements of due process.") (internal citation omitted). Judges in this Court have
frequently held that email is a particularly reliable method of service where, as here, the defendants
engaged in online business and regularly communicated with customers via email. *Mattel, Inc. v.*
*Animefunstore, et al.*, 18 Civ. 8824 (LAP) (Dkt. 81) (S.D.N.Y. May 1, 2020); *see also Sulzer*, 312
F.R.D. at 332 (service through email was appropriate where the "email address in question is listed

prominently on [defendant's internet homepage…[,] [the defendant] presumably relies at least partially on contact through [its email] to conduct overseas business, and it is reasonable to expect [defendant] to learn of the suit against it through this email address."); *Kaneka Corp. v. Purestart Chem Enter. Co*., 16 Civ. 4861 (MKB) (SIL), 2017 U.S. Dist. LEXIS 228150 at *9 (E.D.N.Y. Oct. 17, 2017) (email service appropriate where defendant conducted its business through email."); *see also Rio Props*, 284 F.3d at 1018 (finding alternative service proper when the defendant had "structured its business such that it could be contacted *only* via its email address"). Moreover, in *NBA*, the court held that "email was a more reliable method of service…because Defendant's email address was verified by the sales platform, while their physical addresses were not." *NBA Props.*, 549 F. Supp. 3d at 797; *see also Restoration Hardware*, 2020 U.S. Dist. LEXIS 228149, at *23 (finding that in light of the evidence that the defendant was associated with certain electronic email accounts, due process was "easily satisfied"); *see also Ouyeinc*, 2021 WL 2633317, at *3 (courts have routinely upheld service by email in infringement actions where online stores' "business appeared to be conducted entirely through electronic communications").

Likewise here, all Defendants engaged in online businesses via their Merchant Storefronts. By virtue of their operation of User Accounts and Merchant Storefronts on Amazon, Defendants used their e-mail addresses to communicate with Amazon, communicate with customers, complete transactions and receive funds. Second Futterman Dec.[6] ¶¶ 5-6.  Plainly, without accurate e-mail addresses, Defendants would be entirely unable to operate their Merchant Storefronts.  Additionally, based on Plaintiff's use of the Rmail program when serving Defendants (including Hague Defendants) via electronic mail, it received confirmation that the e-mails sent were delivered, further confirming that the addresses provided by Amazon were true and accurate. *See, e.g.*, Dkts. 17-18.

---

[6] The Second Futterman Declaration was filed under seal on July 8, 2021, but does not appear on the docket.

Accordingly, because Plaintiff served Defendants via the e-mail addresses they have on record with Amazon which are necessary to operate their User Accounts and Merchant Storefronts, it is reasonable to expect that Defendants learned of this lawsuit via the e-mails sent by Plaintiff.

### III.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court find that this action should not be dismissed as the Court has personal jurisdiction over the Hague Defendants who were properly served via the and Plaintiff further respectfully requests that the Court grant Plaintiff's Motion for Default Judgment against the Hague Defendants.

Dated: December 4, 2023                                     Respectfully submitted,

                                                         EPSTEIN DRANGEL LLP

BY:     /s/ Ashly E. Sands
                  Ashly E. Sands (AS 7715)
                  asands@ipcounselors.com
                  Jason M. Drangel (JD 7204)
                  jdrangel@ipcounselors.com
                  Danielle S. Futterman (DY 4228)
                  dfutterman@ipcounselors.com
                  Gabriela N. Nastasi
                  gnastasi@ipcounselors.com
                  60 East 42nd Street, Suite 1250
                  New York, NY 10165
                  Telephone:     (212) 292-5390
                  Facsimile: (212) 292-5391
                  *Attorneys for Plaintiff*
                  *Smart Study Co., Ltd.*